## A. H. BUCKNER v. STOCK YARDS HORSE & MULE COMPANY, Appellant.

### Division One, July 1, 1909.

1. **NEGLIGENCE: Master and Servant: Dangerous Place: Knowledge.** Where there is knowledge of dangerous conditions by both master and servant, and a promise by the master to remedy the condition, and the master directs the act to be done without remedying the dangerous condition, the servant loses no right to charge the master with his injury, unless the danger was so patent that a reasonably prudent person would not have undertaken to obey the directions of the master, or unless the servant in performing the work was guilty of contributory negligence.

2. ————: ————: ————: **Anticipated Injury.** It is not essential that the master could have anticipated the very injury that resulted to the servant from the dangerous condition, or that he could have anticipated that it would have occurred in the exact manner in which it did occur; but it is sufficient if the negligence of the master was the proximate cause of the injury.

3. ————: ————: ————: **Combined With Other Causes.** Where the master's negligence in maintaining a dangerous condition, and but for which the injury to the servant would not have

occurred, combined with some other unforeseen cause, has resulted in an injury to the servant, the master is liable, unless such other cause was under the control of the servant or was the outgrowth of his own conduct.

Appeal from Jackson Circuit Court.—*Hon. W. B. Teasdale,* Judge.

AFFIRMED.

*Harkless & Histed* for appellant.

(1) Under the evidence plaintiff was not entitled to recover. The gate and floor was a simple, ordinary appliance, without any complication, plain to be seen and observed by any man. It was being used constantly and might be out of line at any time. Plaintiff knew its condition and was the man to know it. He had control of it. It was his duty to report it if it needed repairing and he was the man to know when it needed repairing. He knew precisely what he was doing and left the gate in the condition in which it was. There could be no liability on the defendant's part from plaintiff's use of such simple appliances. No such accident had ever occurred before. Plaintiff was the sole judge of where he should leave the gate and how he should leave it and selected his own manner of conducting his affairs, and in no event could defendants have anticipated that he would leave the gate in such condition, or if he did, that horses would get in back of it and push it around against him. Trigg v. Land Co., 187 Mo. 237; Ferber v. Bolt Co., 185 Mo. 309. (2) Defendant was guilty of no negligence. The floor or gates are claimed by plaintiff to have been higher on that morning than at any other time. Defendant knew nothing about it. It was plaintiff's sole duty to look after this condition and to see that it was repaired if he thought it ought to be done. (3) But the alleged defective condition of the gate was

not the cause of the plaintiff's injury. The proximate cause of his injury was the intervening, unexpected and unheard of action of the wild horses in running in behind it. (4) Where the servant in command of the work is charged with the duty of looking after the repairs, the master cannot be guilty of negligence because that has not been done which it was the duty of the servant himself to do. Hollerin v. Iron Foundry Co., 133 Mo. 470; Kleine v. Friends Company, 91 Mo. App. 102.

*Charles R. Pence* for respondent.

(1) Plaintiff knew of the conditions but reported them to his foreman time and again, who promised to have them repaired. It was not plaintiff's duty to repair or to have the repairs made. Defendant through its manager was fully informed of the condition which had existed for several months before the injury. The evidence proving these facts was not even disputed. The manager did not deny, but testified that he did not remember, of plaintiff reporting the condition of the gates and alley. (2) The defective condition of the gate and alley was the proximate cause of plaintiff's injury. The crowding and pushing of the horses would have been harmless had it not been for the defective gate which could not be put back, but projected into the alley and was an obstruction in the alley, in the way of the horses, behind and against which they ran, throwing the gate around and upon plaintiff. It is not essential that a defendant could have anticipated the very injury complained of. It is enough that he has been guilty of negligence, and that such negligence is the proximate cause of the injury. Miller v. Railroad, 90 Mo. 394; Graney v. Railroad, 140 Mo. 98; Hoepper v. Southern Hotel Co., 142 Mo. 388; Harrison v. Electric Light Co., 195 Mo. 629; Dean v. Railroad, 199 Mo. 411. (3) If the gate

and alley had not been defective, so as to make the gate an obstruction in the alley, the action of the horses would not have caused the injury. We have the case, then, of damage caused by the concurring force of defendant's negligence and some other force for which he is not responsible. In such cases the intervening agency does not excuse defendant. Bassett v. St. Joseph, 53 Mo. 300; Vogelsang v. St. Louis, 139 Mo. 136; Lore v. Mfg. Co., 160 Mo. 625; Brash v. St. Louis, 161 Mo. 438; Harrison v. Electric Light Co., 195 Mo. 622.

GRAVES, J.—This is an action for personal injuries. Plaintiff was an employee of defendant, which is a Missouri corporation engaged in the business of a commission merchant, buying and selling horses and mules. In its said business the defendant was using a certain barn in Kansas City, Missouri, known by it as barn "C," which barn extended from Genessee street on the east to Bell street on the west. Through said barn from east to west was an alley twelve feet wide and upon either side thereof were pens in which horses and mules were kept, fed and watered. This alley way had a board floor, and these pens opened in such alley way by means of gates, which gates were in length about the width of said alley way, and swung out into said alley way, so that when the gate of the pen was opened it might be used, if desired, to close the alley way. On the south side of the alley were what were known as pens No. 1, No. 2 and No. 3, No. 1 being at the east end of this alley way and going west followed No. 2 and No. 3 in order. The gate to said pen No. 2 could be opened so that it would close the passage way of said alley way so as to prevent the horses coming out of said pen from going eastward to the street on the east of the barn. At the time of the accident, plaintiff was removing some horses from

pen No. 2 to pen No. 3, the said pen No. 3 being on the south side of the alley way, and the first pen to the west of No. 2 as above indicated. To do so the east end of the alley way would be closed by the opening of the gate to pen No. 2, and of course the gate to pen No. 3, which swung back east in said alley way, would have to be open and the horses driven out of pen No. 2 through said alley way to pen No. 3. The negligence charged in the petition is in this language:

"That it was the duty of defendant to keep said gates and alley in a reasonably safe condition for the purposes aforesaid, but plaintiff states that said defendant negligently and carelessly failed to perform said duty in this, to-wit: That the floor of said alley was at the time of said injury and for a long time prior thereto had been in a defective, dilapidated and unsafe condition, the boards thereof were broken and rotten and the surface was uneven and portions thereof about the gate into which said horses were to be driven were raised up so that said gate could not be fully opened and swung back against said pens, but when opened as far as possible projected out into said alley and left a space between said gate and pens into which the said horses might rush when being driven from one pen to another.

"The plaintiff in transferring said horses opened said gate as far as the same would go; and while in the act of taking a position beyond the said gate to turn the horses therein, the said horses rushed into the space between the said gates and said pens and threw said gate with great force and violence around and against the plaintiff, knocking him down and permanently injuring him."

Damages were alleged in the sum of $10,845, which included $325 for medical attendance and $520 for loss of earnings. There was a second count but this was dismissed and need not be noticed further.

Answer was a general denial, plea of contributory negligence and a plea of assumption of risk. Reply, general denial.

Plaintiff had verdict and judgment for $5,000, from which judgment defendant, after an unsuccessful motion for new trial, has appealed.

The evidence in the case discloses about this state of facts. On June 1st and for a long time prior thereto defendant had the plaintiff in its employ. Defendant was continuously receiving horses and mules for sale, which came from all sections of the country. Plaintiff was what is sometimes denominated a "straw boss" and under the evidence he was strictly such, if in fact he reached that altitude in the scale. It appears that he did see that the men in defendant's employ around their said barn "C" worked, and he worked with them. At times he was alone there and at times he had other men with him. One J. C. Endicott was the foreman for defendant and visited this and other barns belonging to defendant practically every day. He said the duties of the plaintiff were to water, feed and curry the horses, place them around in the barn "and kind of keep the men that I (Endicott) had under him working down there busy." This witness also said that if anything got out of shape plaintiff was expected to fix it up if he could, and if not, to report it to him.

Mr. Wolcott, vice-president of defendant, said plaintiff was not expected to make repairs; that his business was to take care of the horses; that Endicott was their general foreman and hired and discharged the men, and that Endicott had the right to give orders to Buckner, the plaintiff; that he knew of the condition of the gate only in a general way; that looking after the condition of the gate was supposed to be done by the foreman. Endicott was made a witness

by plaintiff and Wolcott by the defendant. Other evidence tended to show that plaintiff had nothing to do with repairs, but that he was expected to report such things to the foreman, and that there was a gang of carpenters at the stock yards who made repairs. Such is the testimony of plaintiff relative to defendant and the barn in question.

It was shown that this alley way floor was made of planks running cross-wise, which planks were two or three inches thick and twelve inches wide. That they had become badly rotted and worn near the center of the alley way, with holes and broken places therein. That they had been in such condition for a long time prior to said June 1, 1901, the date of the accident to plaintiff; that by reason of such condition the ends of such planks next to the south side of the alley way had become so elevated as to preclude the gates from going clear back to the fence when the same were opened; that these gates had hooks upon them for the purpose of fastening them to the alley way fence when opened in full, thus preventing horses from getting between the end of the gate and the fence, and when opened half way for the purpose of closing the alley way these hooks would catch in a staple on the opposite side.

It also appears that plaintiff had full knowledge of these conditions and had notified the foreman Endicott thereof and that Endicott had promised to have the same repaired.

The night before the accident defendant had received a lot of western horses, which were somewhat wild—the receipt of such character of horses was not an unusual occurrence, however. These horses had been placed in pen No. 2 and when the owner of the horses came down the next morning he asked plaintiff to divide them and place a part in another pen. Plaintiff had no help that morning and declined to do so, whereupon the owner went to the foreman,

Endicott, and renewed his demand. Endicott then went to barn "C" and directed plaintiff to put a part of the horses into pen No. 3. Under this direction from his foreman he attempted to divide and remove the horses. He opened the gate of pen No. 3, and pushed it to the east as far as it would go, but owing to the elevated condition of the ends of the boards, could not get it closer than five or six feet of the fence, to which it ought to have been fastened; after he had thus opened the gate, he requested a horse buyer who was present to open the gate of pen No. 2, so that the horses would come out and he, plaintiff, started to the west to turn them into the gate way of pen No. 3; whilst so doing the horses rushed out *en masse* from pen No. 2 and some of them got between the partially opened gate and the fence, violently pushing the gate toward the west and catching plaintiff between the gate and a post or a part of the fence, seriously and permanently injuring him.

Omitting the instruction upon the measure of the damages, the instructions given for the plaintiff read:

"2. The court instructs the jury that if you find from the evidence that plaintiff was employed by defendant to care for the horses in its charge and possession, and was ordered by defendant's foreman to transfer certain horses in its barn from one pen to another therein, through an alley alongside of said pens, and that the floor of said alley was in a dilapidated and defective condition, and the surface thereof so uneven that the gate to said pen into which said horses were to be driven could not be opened fully, but when opened so far as said floor would allow, projected into said alley so that the horses in passing from one pen to the other would likely run behind and against said gate, and that by reason thereof, said floor and gate were not reasonably safe and sufficient; that said conditions were known to defendant, or had existed for such length of time that defendant,

by the exercise of reasonable care, would have known of and could have repaired the same; and that on account of the said condition of the said gate and alley, the said horses, in passing through said alley, ran behind or against said gate and threw the same upon and against plaintiff, while in the performance of his said duty, and he was injured thereby, without negligence on his part directly contributing thereto, then your findings shall be for the plaintiff.

"3.   And you are further instructed that although you may believe from the evidence that plaintiff knew of the defective condition of said gate and alley, and the danger therefrom, in transferring said horses, yet if you further find that the use of said gate and alley was not so dangerous as to threaten immediate injury, or if a reasonably prudent person in the exercise of care and caution incident to the situation in which he was placed, would have continued to work about said place, his knowledge of said defects would not defeat a recovery by him.

"4.   By contributory negligence is meant the want of such care and prudence on the part of the plaintiff as an ordinarily careful and prudent person would have used under the same circumstances."

Defendant asked an instruction in the nature of a demurrer and none other.   This instruction was refused.   Such are the facts of this record.

I.   Defendant having stood upon the one instruction in the nature of a demurrer, below, urges here and with some force, that there was no case to be submitted to the jury.   The case is not absolutely without difficulties, yet when we consider all the applicable rules, we are of opinion that there was made by plaintiff such a case as entitled him to have the judgment of a jury upon the facts.

First, there is ample evidence in the record to show that plaintiff had no duty to repair the place

where and the appliance with which he worked. The vice-president of defendant admits that he had no such duty. He was to report conditions to the foreman, and this the evidence tends to show that he did, and received a promise that the repairs would be made. It was the duty of the defendant to keep both the place and appliances in a reasonably safe condition. A failure so to do was negligence. The evidence amply shows a defective condition of the alley way and gate. It not only shows that plaintiff called the foreman's attention to the condition, but the foreman was there each day and must have personally seen the conditions. But it is sufficient that he was notified by plaintiff, and promised to have the repairs made. There is no question that plaintiff fully knew and understood the conditions when he undertook to remove the horses, but so did the defendant, and defendant directed that the act be done. Under such circumstances the plaintiff would lose no rights, unless the danger was so patent that a reasonably prudent person would not have undertaken to obey the directions of the master. It was at least a question for the jury under the evidence before us.

Where there is knowledge of dangerous conditions upon the part of both employer and employee, and a promise from the employer to remedy the condition, the rule is well expressed by this court in Holloran v. Iron Foundry Co., 133 Mo. l. c. 479, where we said: "This brings us to the contention of plaintiff's counsel that this case falls within the exception to the general rule, that, notwithstanding the defect or risk is brought to the knowledge of the employee yet if he reports it to his employer and the master promises to repair the defect or remove the danger, the servant can recover for an injury caused thereby, within such a period as it would be reasonable to allow the master for its performance, and for any injury suffered in any period which would not preclude all reasonable expectations

that the promise might be kept. This qualification of the general rule is now firmly engrafted in the law of this State. [Conroy v. Vulcan Iron Works, 62 Mo. 35; Keegan v. Kavanaugh, 62 Mo. 230; Flynn v. Railroad, 78 Mo. 195; Stephens v. Railroad, 96 Mo. 207.] And it is likewise the accepted rule in England. [Holmes v. Clarke, 6 Hurl. & N. 349; Clarke v. Holmes, 7 Hurl. & N. 937.]''

But it is urged that the accident is not one which could have been anticipated by the defendant. In other words defendant could not anticipate that wild horses would run between the partly opened gate and the fence, and thus cause the injury. Defendant knew that it was handling horses of that kind and character. Defendant knew that the fence and gate were out of repair and that a promise to repair had been given. It is not essential that defendant could have anticipated the very injury complained of, or that it could have anticipated that it would have occurred in the exact manner in which it did occur, but it is sufficient if the negligence of the defendant was the proximate cause of the injury. [Dean v. Railroad, 199 Mo. l. c. 411; Harrison v. Light Co., 195 Mo. l. c. 629; Hoepper v. Southern Hotel Co., 142 Mo. 378.]

In the Dean case, *supra,* we quoted with approval the following from the case of Fishburn v. Railroad, 127 Iowa l. c. 492: ''The liability of a person charged with negligence does not depend on the question whether, with the exercise of reasonable prudence, he could or ought to have foreseen the very injury complained of; but he may be held liable for anything which, after the injury is complete, appears to have been a natural and probable consequence of his act or omission.'' This as succinctly states the rule as we can state it.

Again, defendant urges that the unforeseen conduct of the horses and not the condition of the floor and gate caused the accident, or was the proximate

cause of the accident. This is not tenable. Where defendant's negligence, and but for which the accident 'would not have occurred, combined with some other cause or causes has occasioned an injury the defendant is still liable, unless such other cause or causes were under the control of the plaintiff in the action, or are the outgrowth of his own conduct. [Harrison v. Kansas City Elec. Light Co., 195 Mo. 1. c. 625.]

In the Harrison case, *supra,* we find a review of all our cases and further citation is useless. After this review the rule of law is thus stated: "Many other cases in this State might be cited illustrative of the rule in reference to concurrent negligence constituting proximate cause, but the foregoing cases are sufficient to demonstrate that if a defendant is negligent and his negligence combines with that of another, or with any other independent, intervening cause, he is liable although his negligence was, not the sole negligence or the sole proximate cause, and although his negligence without such other independent, intervening cause would not have produced the injury."

We conclude therefore that there was no error in refusing the one instruction asked by the defendant.

II. Some complaint is made of the instructions given for the plaintiff, which instructions we have herein set out in full. We are of opinion that there is nothing objectionable in these instructions. They fairly declare the law under the facts of the case. We conclude that there is merit in plaintiff's case and that the trial, *nisi,* conformed to settled principles, and the judgment will be affirmed.

All concur.