Raymond William BOESE, by His Next Friend, Raymond Boese (Plaintiff), Respondent,

**v.**

Alice LOVE (Defendant), Respondent,

Valley Farm Dairy Company, a Corporation, (Defendant), Appellant.

No. 45212.

Supreme Court of Missouri,

Division No. 1.

March 11, 1957.

Motion for Rehearing or to Transfer to Court en Banc Denied April 8, 1957.

Moser, Marsalek, Carpenter, Cleary, Jaeckel & Hamilton, G. W. Marsalek, St. Louis, for appellant. Paul E. Fitzsimmons, Clayton, of counsel.

Meyer, Hoester & Coleman, Hal B. Coleman, Arnold J. Willmann, Clayton, for respondent Alice Love.

Charles M. Warner, Ernest E. Baker, St. Louis, for respondent Raymond William Boese.

VAN OSDOL, Commissioner.

In this action for damages for personal injury against defendant Alice Love and defendant Valley Farm Dairy Company (sometimes hereinafter referred to as Dairy Company), plaintiff's case was submitted to the jury as against both defendants. The jury found for plaintiff and

against defendant Dairy Company and assessed plaintiff's damages at $10,000; but the jury found against plaintiff and for the defendant Alice Love. Defendant Dairy Company appealed from the ensuing judgment in favor of plaintiff. Plaintiff appealed from the judgment in favor of defendant Alice Love; however, plaintiff has not perfected his appeal from the judgment in favor of defendant Alice Love; but defendant-respondent Alice Love has filed her brief herein in opposition to certain contentions of error in the trial of the case assigned by defendant-appellant Dairy Company.

Plaintiff's case as against defendant Dairy Company was submitted on negligence of that defendant in parking its delivery truck at the place and in the manner and circumstances as hypothesized in plaintiff's principal verdict-directing Instruction No. 1, infra.

Herein defendant-appellant Dairy Company has made the initial contentions that the trial court erred in overruling Dairy Company's motions for a directed verdict; and that plaintiff's verdict-directing Instruction No. 1 is neither supported by the law nor the evidence. It is asserted that plaintiff failed to make out a submissible case in that there was no substantial evidence tending to show defendant Dairy Company was negligent; and that, even if defendant Dairy Company were negligent as submitted, such negligence was not the proximate cause of plaintiff's injury.

Plaintiff, Raymond William Boese, a child four years old, was injured in or near the intersection of Genesta Avenue, a north-south street in St. Louis County, and Heege Road, an east-west street. Genesta Avenue intersects Heege Road on the north side thereof. As one walks south along the west side of Genesta Avenue and south across Heege Road, one walks directly into the front (north) door of Heege Market, a grocery store in a building with a thirty-foot front on Heege Road. The front door is in the center of the front of the building. East of the Heege Market building and

south of Heege Road is a north-south street called Genesta Place, one block long.

There is a six-foot, east-west concrete walk along the immediate front of the Heege Market building, and to the northward of the walk is an area about eight feet wide surfaced with tar and gravel. A utility pole is set eight feet two inches north of the north side of the concrete walk, and north of the utility pole there is an area approximately eight feet wide also surfaced with tar and gravel. This latter area or shoulder lies along the south side of the eighteen-foot tarvia pavement of Heege Road. There is a ten-foot driveway a few feet west of the store. A sign indicating a bus stop is one foot east of the driveway. People awaiting the bus sometimes stand at the bus sign, and sometimes stand in front of the store door.

A little before noon on a hot dry day in late August during "summer vacation time," plaintiff's sister, Jo Ann Boese, nine years old, left the Boese home situate on the west side of Genesta Avenue six doors north of Heege. She was going to the Heege Market for some ice cream. She did not know her small brother, plaintiff Raymond, was following her until she arrived at the intersection of Genesta Avenue and Heege Road. In crossing Heege Road to enter Heege Market, Jo Ann and Raymond were obliged to turn somewhat westwardly in order to pass around the rear (west) end of Dairy Company's truck which had been parked headed eastwardly north of the utility pole. Defendant Dairy Company's employee-driver had left the truck there a few minutes before and was delivering dairy products to the store. The truck was a solid panel refrigerator truck twenty-one and one-half feet long and seven and one-half feet wide. The rear end of the truck was "about" four feet east of a northward projection of the west side of the store, and the front of the truck was "about" six feet west of a northward projection of the east side of the store. There was testimony that the right side of the truck was twelve to fifteen inches from (north of) the utility

pole. But there was testimony that the left wheels of the truck were as much as three feet north of the south side of the eighteen-foot tarvia pavement.

While in the store plaintiff's sister Jo Ann bought some ice cream for herself and her small brother, plaintiff Raymond, and departing from the store, Jo Ann went to the rear of the truck. She saw two automobiles approaching—one, the nearer, was coming from the west on Heege, and the other from the east. The latter automobile was driven by defendant Alice Love—it was then "about a block (to the eastward)." The automobiles were both moving twenty to twenty-five miles per hour. They met at a point to the eastward of the parked truck.

Jo Ann had waited for the eastbound automobile to pass, and then, seeing that she had time to safely cross Heege in front of the westbound Love car, Jo Ann passed northeastwardly across Heege. She had told Raymond to "come on," and thought he was following her; but when she got across Heege, Jo Ann saw her brother was coming around the rear end of the truck. She also saw the Love car "didn't have any intentions of stopping," and she called to Raymond to "wait"; but apparently he did not hear her. Raymond came on across the south half of the street, and on into the pathway of the westbound automobile driven by defendant Alice Love, and was struck by the left headlight of the Love car. Defendant Alice Love had not seen plaintiff before her car struck him.

There was evidence tending to show that the Love car left skid marks eighteen to twenty-five feet long. The skid marks "were right, practically from the doorway going west." There was evidence that the skid marks of the right and left wheels of the Love car were on the north half of the paved portion of Heege. And there was evidence that the skid marks of the right wheels of the Love car were as much as two feet over on the north shoulder of Heege. Plaintiff was thrown to a point in the approximate center of Heege Road about fifty feet west of the rear end of the truck.

There was evidence that persons crossing Heege, having approached from Genesta in going to the Heege store, customarily passed directly south across Heege and to the front entrance of the store. There also was evidence that children frequented the intersection and the store. In vacation time they played in the vicinity of the intersection, and bought candy and ice cream at the store. Defendant's employee-driver testified that "different times," he had noticed pedestrians crossing Heege at all angles. And he had "seen children there" during summer vacation. He saw some children inside the store just "before this accident happened," including a little boy "approximately four years old."

We shall have occasion to state more of the evidence in the further progress of this opinion.

Inasmuch as defendant-appellant contends that plaintiff's principal verdict-directing Instruction No. 1 is not supported by the law and the evidence, and contends other errors in the giving of the instruction, we now quote Instruction No. 1 in its entirety, as follows,

"The Court instructs the jury that it is the duty of the operator of every motor vehicle on the public streets and highways in the State of Missouri to exercise ordinary care in parking their motor vehicle so as not to endanger persons lawfully using such streets and highways.

"The Court therefore instructs the jury that if you find and believe from the evidence that at the time and place mentioned in evidence Heege Road and Genesta Avenue were open, public streets in St. Louis County, Missouri and that Genesta Avenue intersected Heege Road on the north, and that pedestrians and particularly children customarily crossed Heege Road at the west side of Genesta Avenue, and that

defendant Valley Farm Dairy Company, through its employee knew or, by the exercise of ordinary care, would have known that pedestrians and particularly children customarily crossed Heege Road at the west side of Genesta Avenue, if you find they did so, and that defendant Valley Farm Dairy Company, acting through its employee, parked its motor truck on the south side of Heege Road across the place where pedestrians customarily cross Heege Road at the west side of Genesta Avenue, if you so find, and with said motor truck extending into said intersection, if you so find, and that at the time in question plaintiff was in the act of crossing Heege Road from the south to the north side thereof at the west side of Genesta Avenue, and that he passed to the rear (west) of said truck and that plaintiff's view of westbound automobiles on Heege Road approaching the place where he was crossing was obstructed by said truck, and that at said time and place defendant Love was driving an automobile west on Heege Road approaching and at the place where plaintiff was crossing, and that defendant Love's view of plaintiff crossing Heege Road was obstructed by said truck after plaintiff started northwardly to cross said street until plaintiff reached a place one to three feet on the black top portion of Heege Road, and that said truck thereby endangered the safety of plaintiff while crossing Heege Road, if you so find, and that defendant Valley Farm Dairy Company, at the time it parked said truck, knew or by the exercise of ordinary care would have known that said truck was likely to endanger the safety of plaintiff while crossing from the south to the north side of Heege Road, if you so find, *and that defendant Valley Farm Dairy Company, by the exercise of ordinary care could have parked said truck at a place reasonably convenient for making deliveries to the Heege Market, and so as not to en-*

300 S.W.2d—29½

*danger the safety of plaintiff in crossing Heege Road at the place in question,* if you so find, and that the automobile driven by defendant Love collided with plaintiff and that plaintiff was thereby injured, and that in so parking said truck under the aforesaid conditions defendant Valley Farm Dairy Company failed to exercise ordinary care to park said truck so as not to endanger plaintiff while crossing Heege Road and was thereby negligent, if you so find, and that such negligence, if any, thereby directly caused, or directly contributed to cause plaintiff to be injured, if you so find, then your verdict should be in favor of plaintiff and against defendant, Valley Farm Dairy Company." (Our italics.)

█ In reviewing the contention that plaintiff failed to make out a case as submitted, we shall consider the evidence from a standpoint most favorable to plaintiff. Dickerson v. St. Louis Public Service Co., Mo.Sup., 286 S.W.2d 820.

It is to be readily inferred that defendant Dairy Company's truck, parked as the evidence tends to show it was, interfered with or obstructed the view by pedestrians including children (when walking around and across the intersection and to and from the bus stop and store) of vehicles approaching on the east-west street, Heege Road. Likewise, the truck, parked as it was, interfered with or obstructed the view of pedestrians by the drivers of eastbound and westbound vehicles in approaching the intersection on Heege. We note the intersection of the short street, Genesta Place, and the traffic thereon one should expect to be moving from and to that street to and from the west on Heege; and we further note the bus stop a few feet west of the store. We have the tentative opinion the evidence of these conditions and circumstances and with respect to pedestrian and vehicular traffic in and around the intersection of the named streets (particularly the evidence supporting the facts that pedestrians, including children, customarily passed from Genesta Avenue

directly across Heege in approaching and leaving the store; that pedestrians crossed the intersection at all angles; that children frequently played in the vicinity of the intersection during vacation time and patronized the store in purchasing confections, of which facts, if true, it could be reasonably inferred defendant's driver-employee was aware) was such as was to be considered by the jury in determining whether or not defendant created an unreasonable hazard and was negligent in parking its truck there, and was evidence, sufficient and substantial, supporting the inference of negligence. Domitz v. Springfield Bottlers, 359 Mo. 412, 221 S.W.2d 831; Kuba v. Nagel, Mo.App., 124 S.W.2d 597.

■ It is true that plaintiff did not rely on the violation of an ordinance to establish Dairy Company's negligence, but submitted negligence of that defendant in the circumstances as hypothesized in Instruction No. 1. If parking the truck in the shown manner and place and in the shown circumstances could be reasonably said to constitute negligence, it was immaterial whether the parking was in violation of an ordinance. Domitz v. Springfield Bottlers, supra. There was evidence tending to show that defendant could have parked its truck at places other than in front of the Heege store and where the views of drivers and pedestrians approaching the intersection and in and around the market and bus stop would not have been obstructed; and no evidence established that it was necessary to park the truck in its shown position in order to deliver dairy products at the store. In fact Dairy Company's employee-driver testified he occasionally parked the truck elsewhere while making deliveries at the store. In this latter respect the facts of the instant case differ from the facts alleged in Baker v. Cities Service Oil Co., 321 Ill.App. 142, 52 N.E.2d 284, 285, cited by defendant-appellant, where the defendant's gasoline truck was necessarily parked at a particular place on a street for the purpose of unloading gasoline to underground storage. See again Do-

mitz v. Springfield Bottlers, supra, 359 Mo. at pages 416–417, 221 S.W.2d at page 833. We hold that the evidence supported the submission and inference that defendant Dairy Company was negligent.

■ As stated, defendant-appellant Dairy Company further urges that, assuming the jury reasonably could have found Dairy Company was negligent, there was no substantial evidence tending to establish that such negligence was the proximate cause of plaintiff's injury. It is argued that plaintiff's injury was brought about by the intervening unforeseeable conduct of plaintiff and of defendant Alice Love, combined with the wholly coincidental circumstance that an eastbound automobile was passing at the moment.

■ It is our view that it reasonably could be found that if Dairy Company's truck had not been parked as it was, the injury would not have occurred—there was causal connection between Dairy Company's negligence and plaintiff's injury. Given causal connection, "proximate" causation is ordinarily a jury question.

■ Again adverting to the evidence tending to show the position the truck was parked and the evidence tending to show the extent of vehicular and pedestrian movement in and about and across the intersection and street and the evidence that children frequented the intersection and store, we think it is reasonable to say that Dairy Company's employee-driver should have foreseen that some situation might develop, because of the presence of the truck there, wherein someone, perhaps a child as yet irresponsible for its conduct, would be subjected to some injury. Although the jury absolved defendant Alice Love from responsibility, nevertheless, and assuming she was negligent, Dairy Company was not absolved from concurrent responsibility for its negligence, if the acts and conduct of Alice Love and of plaintiff were not so extraordinary and unforeseeable as to break the causal connection between Dairy Company's negligence and plaintiff's injury. And,

now, after the event, we believe that not all reasonable men would say plaintiff's injury was not a natural and probable consequence of defendant Dairy Company's negligence in the circumstances as submitted. It has been written that, in determining proximate cause the question is not whether, in the exercise of reasonable prudence, a defendant could or ought to have foreseen the very injury complained of, but a defendant may be held liable for an injury which, after the occurrence, appears to have been a natural and probable consequence of his act or omission. Buckner v. Stock Yards Horse & Mule Co., 221 Mo. 700, 120 S.W. 766; Hamilton v. Standard Oil Co. of Indiana, 323 Mo. 531, 19 S.W.2d 679; Gray v. Kurn, 345 Mo. 1027, 137 S.W. 2d 558. And see again Dickerson v. St. Louis Public Service Co., supra, 286 S.W.2d at pages 824-826, for a study of the problem of proximate cause, and wherein many cases treating with the problem are collated and examined. In the instant case we rule that the question of proximate cause was for the jury.

Attending defendant-appellant's further contentions of error in giving Instruction No. 1—

■ The instruction hypothesized and required the finding of facts, circumstances and conditions supported by evidence which, if found by the jury to be true, justified the inference of Dairy Company's negligence—as we have held in our consideration of Dairy Company's contention that plaintiff failed to make out a case. The instruction further required the finding that "in so parking said truck under the aforesaid conditions" defendant was negligent. Direct or proximate causation and injury were also submitted. The submission was not one of general negligence as in the case of Girratono v. Kansas City Public Service Co., 363 Mo. 359, 251 S.W.2d 59, wherein the instruction submitted negligence in starting the bus in such a manner as to cause it to skid, and there were no facts or circumstances hypothesized and submitted justifying the finding that some submitted

specific act or omission of defendant was negligent and caused the bus to skid.

Defendant-appellant contends the clause of the Instruction No. 1 which we have italicized "imposes an additional burden on defendant which does not exist and is not justified by law." Defendant-appellant says the issue is simply whether the truck driver was negligent in parking when and where he did and whether such negligence was a proximate cause of plaintiff's injuries—whether he could have parked anywhere else was immaterial to the issues—and the inclusion of the italicized clause renders the instruction prejudicial to defendant Dairy Company, and constituted reversible error.

Without deciding the essentiality of the hypotheses of facts substantially as submitted in the italicized clause in a plaintiff's verdict-directing instruction in a case of this nature, we have the opinion that the fact that Dairy Company could have parked its truck at some other reasonably convenient place for making deliveries was a material fact relevant to the issue of Dairy Company's negligence. In Domitz v. Springfield Bottlers, supra, [359 Mo. 412, 221 S.W.2d 831, 833] it was assumed that the parking of the vans at the intersection was not a matter of necessity; and in distinguishing the Baker case this court said, we are of the opinion that in the Baker case "the necessity of the truck's being parked at that point was a material element to be considered." And in Dickerson v. St. Louis Public Service Co., supra, this court remarked that no explanation was made, in that case, why the driver of defendant's bus could not have pulled in to the curb at some other point on down Chouteau. We cannot follow defendant-appellant's argument that the inclusion of the italicized clause was prejudicial to defendant-appellant.

Defendant-appellant's other contentions of error go to trial and after-trial incidents, and to argument. In urging the converse of these contentions, plaintiff-respondent is joined by defendant-respondent Alice Love.

Defendant Alice Love, when on the witness stand, testified that plaintiff was lying in the center of Heege ten or twelve feet in front of the front end of the Love car when it had been brought to a stop. The transcript further discloses the following question and answer and the reporter's parenthetically noted observations.

"Q. What did you do then, after you came to a stop? A. Well, I was pretty well shaken up and I started to get out of the car and I couldn't walk (cries). I held onto the handle of the car for a few minutes before I could walk over to him. (Sobs loudly.)"

The trial court declared a recess, and in chambers and without the presence of the jury, counsel for plaintiff and defendant Dairy Company joined in a motion for a mistrial. In the ensuing extended colloquy it seems it was tacitly agreed that after the witness, defendant Alice Love, had left the witness stand, she complained that she was experiencing pain, and she said she couldn't "go on." Seated at a place in the courtroom about twenty feet from the open door of the jury room, she was sobbing, was given a glass of water, and was comforted by fanning. The trial judge was of the opinion that "this matter is in what the Courts call 'the sound discretion of the trial Judge.'" He remarked that the actual participants "in this involved accident have a great deal of emotion regarding it," and the judge wondered if there was any cautionary instruction the court might give. Counsel for defendant Love felt that such an instruction might "serve to point it out again" and "would seem to mean she was feigning." But counsel for defendant Dairy Company said, "If she was feigning, I would be only too glad to go on. I am sure she wasn't." Whereupon, and without the presence of the jury, Alice. Love was interrogated by the judge. She said she thought she would "be able to go on." The jurors, having returned to the courtroom and upon being questioned by the judge, indicated that they could disregard the incident entirely, and

consider the case solely on the evidence. The motion for a mistrial was overruled.

Again, after the cause was submitted and when the jury had considered upon their verdict for something like two and a half hours, a separate maintenance case was being tried in the courtroom. During cross-examination the wife, plaintiff in the maintenance case, exclaimed in a loud voice, "You can keep your money. I can't stand your torture. You can't do this to me!" There was no showing that the jury heard the exclamation. The door of the jury room was closed. But counsel for defendant Dairy Company moved the court to declare a mistrial on the ground that, if the jury heard the exclamation, it was prejudicial to that defendant, "in connection with the fact that Mrs. Love had a somewhat similar breakdown." The court offered to cause the jurors to return to the jury box for the purpose of inquiring if they had heard the exclamation, but to this counsel for defendants would not agree. "On the basis of the foregoing record," the court overruled the motion for a mistrial.

■ We agree with the trial judge that questions of the prejudicial effect of these trial and after-trial incidents were matters for the exercise of the trial court's sound discretion. Clark v. McKeone, Mo.Sup., 234 S.W.2d 574; Petty v. Kansas City Public Service Co., 354 Mo. 823, 191 S.W.2d 653; Borrson v. Missouri-Kansas-Texas R. Co., Mo.Sup., 161 S.W.2d 227, and cases therein cited. We surmise that the instant case was one likely to arouse the emotions, especially on the part of the parties, and of the other witnesses who saw the tragedy; but our examination of the transcript indicates that the trial judge carefully considered the effect of emotion manifested by the witness-defendant Love. It is doubtful that the jury heard the exclamation of the witness, plaintiff in the maintenance case. The trial judge was present and better able than are we to gauge the effect of the stated incidents, and we cannot say the trial court abused its discretion in overruling the motions for a mistrial.

In argument to the jury, Mr. Coleman, counsel for defendant Alice Love, was using a chart or diagram which he had prepared personally the preceding evening. The diagram indicated the position of the vehicles involved, with further indications in figures denoting distances and time of the approach of vehicles and the progress of plaintiff in crossing Heege to the point where he was injured. The diagram had not been introduced into evidence. Defendant Dairy Company's counsel objected "to any charts or diagrams or plats, which have not been measured; that have simply been drawn by anyone." The trial court ruled, "I think I am going to let Mr. Coleman utilize the diagrams he drew last night, but I am sure the Jury will understand that he is trying to illustrate graphically on paper the argument he is making. To that extent your objection is overruled." Defendant-appellant contends error in permitting counsel's use of the diagram in argument.

It would seem the use in argument by counsel of graphic aids such as charts or diagrams or plats which have not been put in evidence is permissible, provided they are used merely to illustrate or elucidate a point in counsel's argument based on the evidence, and provided they are not used in such a manner as to tend to confuse or mislead the jury into considering them as evidence. Four-County Electric Power Ass'n v. Clardy, 221 Miss. 403, 73 So.2d 144, 44 A.L.R.2d 1191; and other cases in the Annotation (limited to the cases treating with counsel's use of graphic aids on the issue of damages, however), 44 A.L.R.2d 1205; L.R.A.1918D, 80; 88 C.J.S., Trial, § 177, p. 348; 53 Am.Jur., Trial, § 490, pp. 395–396. In our case, we have the opinion the trial court's ruling made it reasonably clear to the jury that the diagram was being used by counsel only to illustrate counsel's argument, and defendant-appellant does not point out in what way the manner of use was misleading or in what respect counsel's argument, of which the diagram was being used as illustrative, was not based on the evidence introduced. The contention is ruled adversely to defendant-appellant.

The judgment should be affirmed.

It is so ordered.

COIL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court.

All of the Judges concur.