Jeannine LA TOUR, a minor, by and through Doris LaTour, her next friend,
Plaintiff-Respondent,

v.

PEVELY DAIRY COMPANY, a corporation, and Oscar G. Schaefer, Administrator of the Estate of Mary Bradshaw, Deceased, Defendants-Appellants.

Nos. 30659, 30660.

St. Louis Court of Appeals.

Missouri.

Sept. 19, 1961.

Motions for Rehearing or Modification or to Transfer to Supreme Court Denied Oct. 17, 1961.

E. C. Albrecht, Jr., St. Louis, for defendant-appellant, Pevely Dairy Co.

F. X. Cleary, St. Louis, for defendant-appellant, Schaefer.

William R. Kirby, St. Louis, for respondent.

BRADY, Commissioner.

Jeannine LaTour, hereinafter referred to as respondent, by her mother, Doris LaTour, as her next friend, brought this action against Pevely Dairy Company, a corporation, hereinafter referred to as Pevely, and Oscar G. Schaefer, administrator of the estate of Mary Bradshaw, to recover damages for personal injuries she sustained as a result of an occurrence at or near the intersection of 22nd and Benton Streets in the City of St. Louis on April 28, 1956. We will refer to the administrator's side of this case in the name of the deceased driver, Bradshaw. Pevely and Bradshaw separately appeal.

There is no contention on either appeal dealing with the excessiveness of the verdict or in any other way relating to the nature and extent of respondent's injuries, and therefore the facts with respect to those issues will not be stated herein, except insofar as the physical location of the respondent's injuries may have bearing on where the respondent was when she was struck.

The facts were that the intersection at 22nd and Benton Streets had no traffic control signals or signs governing passage through it. Twenty-second Street is 36 feet wide, and Benton is 30 ft. 6 inches wide. There once were street-car tracks running down the center of 22nd Street, and these have been covered up with blacktop. The rest of the street is brick. Respondent, just under six years of age, lived east of this intersection, at 2123 Benton Street. Upon being sent by her mother to the grocery store at the northwest corner of the intersection, respondent walked west on the north side of Benton to the intersection, crossed 22nd Street and went into the store. While she was in the store, Pevely's truck pulled up to the northwest corner and parked at an angle so that the front end was headed southwest and was out into Benton, while the rear end extended northeast and, being about 25 feet long, extended out into the middle of 22nd Street with the result that in walking across 22nd Street from the northeast corner to the northwest corner, the path was blocked. There was no marked crosswalk. Automobiles were parked at the east and west curbs of 22nd Street so that only the northbound lane of traffic on 22nd Street was clear. The Bradshaw automobile was proceeding northwardly on 22nd Street. It was a bright, dry day.

The respondent's mother testified that about ten minutes after she had sent the respondent to the store, a neighborhood child came to the house and told her respondent had been run over, and that on arriving at the scene she found her daughter lying on the street close to the east curb in front of 2504 22nd Street. She further testified that respondent's injuries were to

the right side of her face, her right leg and her right hip, although there were some marks to the left side of her face; that though there was no marked crosswalk, respondent was taught to cross at the corner, and that there was more pedestrian traffic around this corner on Saturday but less vehicle traffic; the witness Brown testified as to the location of the Pevely truck, gave its size as about 25 feet long, that it was solid and could not be seen through, that the respondent was lying about 20 or 25 feet north of the truck on the opposite side of the street after the accident, that the Bradshaw automobile was about 10 to 12 feet south of respondent. The witness Bronsky was sitting at the window in his house at 2506 North 22nd Street, and hearing a loud thump, went to the door and saw the respondent's body rolling across the street. He stopped her before her head hit the curb. At the time she was rolling across the street she was approximately in front of 2502 North 22nd Street. He first saw respondent when she was about 2½ feet east of the center of 22nd Street, rolling toward the curb. He further testified that the northernmost parked car on the east side of the street was the third car from the intersection, and that respondent was lying about 4 feet north of the front of that car, and in making that estimate he assumed a length of 17 or 18 feet per car. The witness Davis was standing by the tavern located on the southeast corner of the intersection. The first thing he heard was brakes squealing and he looked up and saw respondent rolling out past the right side of the car to the east curb. When he first saw the Bradshaw car, it was stopped in the middle of 22nd Street, with the car out of, or north of, the intersection. The respondent was "very near" the car. He too confirmed the truck's location and position. The witness Lois Johnson testified she was sitting on the front steps of 2508 North 22nd Street with her husband and Lois Obards at the time of this occurrence. She first saw the respondent when she was up in the air, and at that time the front end of the Bradshaw automobile was just barely clearing the back end of the truck and was still moving. She heard no horn and at first thought the object in the air was a box that had fallen off of the truck. The witness estimated that the object she first thought was a box was at the most 2 or 3 feet north of the truck and was over the hood of the automobile. She further testified that children used 22nd Street as a playground. The witness Potrzeboski, the respondent's aunt, was working in the tavern at the southeast corner of the intersection on the date of this occurrence. She saw the respondent walking to the store and then a little later heard brakes and a thud. When she went to the scene, she saw damage on the car on the hood on the driver's side extending almost to the center of the hood. She saw skid marks on the blacktop that covered the center portion of 22nd Street. These marks were lined up with the car and to the south of it. The driver's side of the car was approximately "astraddle" the blacktop when she saw it although it would not be necessary to drive "astraddle" the blacktop to get by, even with the truck parked as it was and the cars parked on the east curb on 22nd Street north of Benton as they were.

The witness Bilhorn, a registered professional engineer, was asked in what distance a 1950 2-door Plymouth automobile driven at 15 mph on a dry blacktop surface, assuming ¾ second for reaction time and further assuming the automobile was in a fair mechanical condition, could be stopped with safety to its driver and others on the street. His answer was that 20 to 25 feet would be the minimum. He was asked about stopping distance at 20 mph, and gave his answer at 22 to 28 feet.

Respondent's counsel read into the record the following, from Volume 1 of the Revised Code of the City of St. Louis, 1958, Chapter 69, Article 4, Section 50:

"It shall be unlawful for an operator of a vehicle to stop, stand or park such

vehicle in any of the following places except when necessary to avoid conflict with other traffic or in compliance with the directions of a police officer, a traffic signal or signals: A. Within an intersection. B. On a crosswalk."

He also read into the record Chapter 69, Article 1, Section 1, Crosswalk, as follows:

"That portion of the roadway ordinarily included within the prolongation of the curb, a property line at intersection or any other portion of a roadway, clearly indicated for pedestrian crossing by line or other marks on the surface."

The respondent then testified that she remembered nothing about the occurrence and rested her case.

Pevely presented its motion for a directed verdict, as did Bradshaw. Upon these motions being overruled, Bradshaw's counsel indicated he had some evidence to offer, and counsel for Pevely asked that the jury be instructed to disregard such evidence in deliberating on the case against Pevely. This the trial court refused, and counsel for Bradshaw proceeded to put on evidence on her behalf. Much of that evidence had to do with the respondent's recovery from the effects of her injuries and other matters that are not at issue on this appeal. When Bradshaw's counsel called Mrs. Obards to the stand, Pevely's counsel renewed his objection to such testimony being allowed to affect the case against Pevely and his request that the jury be instructed to limit such evidence to the case against Bradshaw. The objection was overruled and the request denied.

Mrs. Obards testified that she was sitting on the front steps of Mrs. Johnson's house with her on the occasion in evidence and, after confirming the position of the truck, stated that she saw the respondent come from the door of the store and proceed out into the street, that respondent was skipping and running "as a child will", that when the respondent entered the street, the witness looked to the south to "see if she was in the clear" and when she glanced back the respondent was already out from behind the truck; that respondent was about a child's arm's length away from the rear of the truck when she came out from behind it, that at that time the front of the Bradshaw automobile was even with the box type body of the truck and traveling at about 20 miles per hour on the right hand side of an imaginary center line on 22nd Street; that respondent had reached a point just past the imaginary center line of the street and just in front of the automobile when she was struck, that the automobile was then about one-half or one-third on the blacktop and the rest of it was over the brick pavement to the east of the blacktop strip, and did not move after the impact. The witness further testified that before the car struck the respondent, Mrs. Bradshaw had put on her brakes and swerved to the right, that " * * * when she saw the child she swerved", but how far she swerved the witness could not say. There was one car she remembered being parked in front of Mrs. Johnson's and another parked " * * * about the corner there in front of the drug store, * * *." At the conclusion of her testimony, counsel for Pevely renewed his objection to her testimony and asked the trial court to " * * * strike it insofar as the Defendant Pevely Dairy Company is concerned * * *", and requested further that the jury be instructed to disregard such testimony " * * * for determining any issues which are in dispute here between plaintiff and the Pevely Dairy Company." Upon the trial court's overruling his objection and requests, Pevely's counsel moved for a mistrial on the same grounds and was refused. The jury returned a verdict against both defendants, Pevely and Bradshaw, in the amount of $11,000 and the trial court entered judgment accordingly. From this judgment, their timely after trial motions having been overruled, both Pevely and Bradshaw have perfected this appeal.

It is Pevely's contention that the trial court prejudicially erred in denying its motion for a directed verdict offered at the close of respondent's case because there was either no evidence of a causal connection between the position of Pevely's truck and the respondent's injury, or that such evidence was merely circumstantial in character leading equally to inferences either way, and thus respondent failed to bear the burden of proof. Pevely does not specifically assign as prejudicial error the trial court's actions with regard to its repeated objections to the testimony of Mrs. Obards or its requests for limiting such testimony, but throughout its brief it takes the evidence on plaintiff's case alone, insisting that Mrs. Obards' testimony can not be used insofar as the issues between it and respondent are concerned. Bradshaw makes two assignments of prejudicial error: first, in overruling her motion for a directed verdict offered at the close of all the evidence, and second, in the giving of Instruction No. 2.

■■ With respect to Pevely we do not reach the question of whether the respondent is entitled to the benefit of Mrs. Obards' testimony and the inferences thereof (compare May v. Bradford, Mo., 348 S.W.2d 133, handed down by the Missouri Supreme Court on July 10, 1961) for the reason that taking respondent's own evidence in the light most favorable to her and giving her the benefit of all reasonable inferences to be drawn therefrom, as we must do when considering Pevely's contention that the trial court erred in denying its motion for a directed verdict, Boese v. Love, Mo., 300 S.W.2d 453, we hold that respondent did make a submissible case and the trial court correctly denied Pevely's motion to dismiss. In passing on the correctness of the denial of Pevely's motion for a directed verdict we are confined to the issues submitted, Thaller v. Skinner & Kennedy Company, Mo.App., 307 S.W.2d 734. The submission against Pevely was made in respondent's Instruction No. 1, which reads as follows:

"Instruction No. 1

"The Court instructs the Jury that if you find and believe from the evidence that at the time and place mentioned in evidence, 22nd street and Benton Avenue were both open and public streets in the City of St. Louis, Missouri, and that said 22nd Street intersects Benton Avenue and that pedestrians customarily cross 22nd Street at the north side of Benton Avenue and that defendant, Pevely Dairy Company, through it's (sic) employee, on April 28, 1956, knew or by the exercise of the highest degree of care would have known that pedestrians customarily crossed 22nd Street at the north side of Benton Avenue, and that defendant, Pevely Dairy Company acting through it's employee, did on said occasion park it's motor-truck at the northwest corner of said 22nd Street and Benton Avenue across the place where pedestrians customarily cross 22nd Street at the north side of Benton Avenue, with the motor-truck extending into said intersection in a south-westwardly direction and blocking the customary crosswalk on the north side of Benton Avenue, if you so find, and that said motor-truck in said position obstructed the passage of persons crossing said 22nd Street there and that said truck in said position obstructed both the view of persons crossing said street and motorists travelling on and over said 22nd Street and thereby endangered the safety of persons, particularly the plaintiff while crossing said street there, and that said defendant, Pevely Dairy knew or by the exercise of the highest degree of care would have known that said truck so located endangered persons crossing there and if you further find that while said truck was so located plaintiff started to cross the said 22nd Street from the west to the east side there, at the north side of Benton Avenue and passed to the rear (north) of said truck and that plain-

tiff's view of northbound automobiles on said 22nd Street approaching the place where she was crossing was obstructed by said truck, and if you further find that at said time and place the deceased Mary Bradshaw was driving an automobile northwardly on 22nd Street approaching the place where plaintiff was crossing, and that the deceased, Mary Bradshaw's view of plaintiff crossing 22nd Street was obstructed by said truck after plaintiff started eastwardly across said street until plaintiff reached a place in the lane next to the center line of said 22nd Street for southbound automobiles and that said truck thereby endangered the safety of plaintiff while crossing said 22nd Street, and that the automobile driven by the deceased, Mary Bradshaw, collided with the plaintiff and that plaintiff was thereby injured, and if you further find, that in so parking said truck under the aforesaid conditions, defendant Pevely Dairy Company was thereby negligent, and that such negligence, if any, thereby directly caused or directly contributed to cause said collision and injury to plaintiff, if you so find, then your verdict should be in favor of the plaintiff and against the defendant, Pevely Dairy Company."

The inference is undeniable that the truck parked as the evidence places it obstructed the passage of pedestrians from the northwest corner of the intersection to the northeast corner and further that it obstructed the view of pedestrians such as respondent of vehicles traveling northward on 22nd Street, as was the Bradshaw automobile. The witness Johnson testified that children played in 22nd Street at this time, having no place else to play, and it could be reasonably inferred that Pevely's employee was aware of this. Boese v. Love, supra, [300 S.W.2d 453] at loc. cit. pages 457 and 458, [1]. Pevely raises no contention otherwise. These facts and the reasonable inferences therefrom were sufficient to make

a jury question of whether or not Pevely, in parking its truck as it did, created a condition which, in the terms of the instruction, "* * * endangered the safety of plaintiff while crossing said 22nd Street * * *" and in so doing was "* * * thereby negligent. * * *" Boese v. Love, supra, 300 S.W.2d at page 458, and cases cited.

However, Pevely's further argument is that even though the jury might find it negligent, still there was no actionable negligence in that there was not sufficient evidence of causal connection with regard to the position of the truck and the respondent's injury. The evidence in this case, taken in the light required of us on this appeal, is that respondent was seen going into the store and next seen by the witness Johnson in the air, "Just partially past the back end of the truck. The front end of the car was just barely clearing the back end of the truck." This same witness also testified that hearing the impact caused her to look up and see respondent in the air; that respondent in the air was two or three feet north of the end of the truck and over the hood of the automobile, which was in the only lane of traffic open and was admittedly proceeding northwardly. The damage to the Bradshaw car was at the left side of the hood, extending almost to the center of it, according to the witness Potrzeboski. Her mother's testimony is that respondent's right side was most severely injured. When we add to this testimony the fact that the rear end of the truck extended almost to the center of 22nd Street and that there were cars parked at the east curb so that of the four traffic lanes only one was open, and that the witness Davis saw the Bradshaw automobile stopped in that lane when he heard the brakes and looked around, the respondent bore her burden of showing sufficient causal connection as to justify submission to the jury. As was said in the Boese case at pages 458 and 459 of the opinion as reported in 300 S.W.2d:

"It is our view that it reasonably could be found that if Dairy Company's truck had not been parked as it was, the injury would not have occurred—there was causal connection between Dairy Company's negligence and plaintiff's injury. Given causal connection, 'proximate' causation is ordinarily a jury question.

"Again adverting to the evidence tending to show the position the truck was parked and the evidence tending to show the extent of vehicular and pedestrian movement in and about and across the intersection and street and the evidence that children frequented the intersection and store, we think it is reasonable to say that Dairy Company's employee-driver should have foreseen that some situation might develop, because of the presence of the truck there, wherein someone, perhaps a child as yet irresponsible for its conduct, would be subjected to some injury. Although the jury absolved defendant Alice Love from responsibility, nevertheless, and assuming she was negligent, Dairy Company was not absolved from concurrent responsibility for its negligence, if the acts and conduct of Alice Love and of plaintiff were not so extraordinary and unforeseeable as to break the causal connection between Dairy Company's negligence and plaintiff's injury. And, now, after the event, we believe that not all reasonable men would say plaintiff's injury was not a natural and probable consequence of defendant Dairy Company's negligence in the circumstances as submitted. It has been written that, in determining proximate cause the question is not whether, in the exercise of reasonable prudence, a defendant could or ought to have foreseen the very injury complained of, but a defendant may be held liable for an injury which, after the occurrence, appears to have been a natural and probable conse-

quence of his act or omission. (Citing cases.)"

It follows that Pevely's contention that the trial court prejudicially erred in refusing to grant its motion for a directed verdict offered at the close of respondent's case is without merit.

Respondent pleaded excessive speed under the circumstances, failure to warn, failure to keep a lookout, failure to stop, driving on the wrong side of the street, failure of Bradshaw to have her automobile under such control that it could be readily and reasonably stopped upon the appearance of danger, and the humanitarian doctrine. Respondent's counsel contends that if there was sufficient evidence to sustain any one of these allegations, then the trial court correctly ruled Bradshaw's motion to dismiss, and we must rule the assignment of error in favor of respondent, citing Schmidt v. Allen, Mo., 303 S.W.2d 652, 653 at loc. cit. page 658, [9]. The plain language of that opinion is to the contrary. It is not the allegations of negligence pleaded we must concern ourselves with, it is the allegations of negligence submitted. Schmidt v. Allen, supra; Thaller v. Skinner & Kennedy Co., supra. The submission made as to the appellant Bradshaw was contained in respondent's verdict directing Instruction No. 2 which reads:

"Instruction No. 2

"The Court instructs the Jury that it is admitted by the defendant, Oscar Schaefer, Administrator of the estate of Mary Bradshaw, that on the 28th day of April, 1956, the deceased, Mary Bradshaw did drive an automobile on and over North 22nd Street, and that said automobile came in contact with the plaintiff, Jeanne (sic) LaTour, and you are further instructed that if you find and believe from the evidence that prior to said collision and injury, there was a truck parked at the northwest corner of North 22nd Street and Benton Street that extended out into the

Southbound traffic lane there, and that said truck obstructed the view of pedestrians crossing from the west to the east and that the said Mary Bradshaw as she approached said truck knew or by the exercise of the highest degree of care would have known that said truck did so obstruct said view and if you further find that Mary Bradshaw did as she approached and passed said truck then and there negligently and carelessly fail to have her said automobile *under such control so that it could be readily and reasonably stopped upon the appearance of danger,* and in so driving at said location was negligent and that such negligence caused or contributed to cause injury to plaintiff, then you are instructed that you will find in favor of plaintiff and against the defendant, Oscar Schaefer, Administrator of the Estate of Mary Bradshaw." (Emphasis supplied.)

■ The respondent urges that it is unnecessary to decide whether or not Instruction No. 2 is an erroneous submission because Instruction No. 6, offered by Bradshaw and given by the court, contained the same type of submission, and that therefore Bradshaw condoned and cured the alleged error of Instruction No. 1 and cannot now raise the point. Instruction No. 6 hypothesizes the obstruction of the truck to the view of the motorists driving northwardly as Mrs. Bradshaw was, and then submitted " * * * and that plaintiff ran behind the said parked truck and into the street, and if you find that at said time the automobile operated by Mary Bradshaw was so close to the point where the plaintiff came from behind the said truck, if you so find, that Mary Bradshaw could not in the exercise of the highest degree of care, have prevented the accident, then, and in such event, plaintiff is not entitled to recover against * * * Mary Bradshaw * *." We doubt that Instruction No. 6 is subject to respondent's contention that it was "a general instruction" and as such constituted an adoption of the error for which

Bradshaw contends Instruction No. 2 constitutes reversible error, but even if we assume that Instruction No. 6 is subject to such an interpretation, respondent is not aided thereby. Myers v. Buchanan, Mo., 333 S.W.2d 18, supplies the complete answer to respondent's contention. At page 23 of the opinion in that case, the court recognizes the rule respondent seeks to apply, and then states:

"The rule that a party cannot complain on appeal of errors committed or invited by himself applies to instructions, but the better view is that 'a party is not estopped by the rule of invited error unless it appears from the record that the court was led or induced by him to commit the error.' * * * *Such rule, however, should be applied with discretion. The underlying reason of the rule is that one party cannot predicate error on an instruction declaring a theory of the law which he himself has adopted and invited and induced the court and his adversary to adopt.* It is sort of a judicial setoff of one error against a similar error, or more properly applied when the court finds that both parties have used or tried to use the same erroneous view of the law *to his own advantage,* in which case this court will not aid either party, but will leave them where they have put themselves."

In Coit v. Bentz, Mo., 348 S.W.2d 941, handed down by the Supreme Court on July 10, 1961, this same contention was made and the court said:

" * * * However, we may not penalize defendant here for attempting to converse the lack of control, for if the submission of an issue of control was error the initial error was plaintiff's, and he invited any such mischance on defendant's part."

The appellant Bradshaw was not precluded from raising her contentions of error as to Instruction No. 2 because of her submission to the court of Instruction No. 6.

The appellant Bradshaw contends that the submission is of "general negligence". As was pointed out in Myers v. Buchanan, supra, (333 S.W.2d 18) at page 22, Note 1, the term "general negligence" more clearly designates the case to which the res ipsa loquitur doctrine is applicable and where there is proof of evidentiary facts sufficient to show some negligent act or omission it would be more correct to say that a case of specific negligence was made but that there was an attempt to submit specific negligence in general terms. It requires only a brief consideration of the attack of the appellant Bradshaw on Instruction No. 2 to disclose that her assignment of error is that Instruction No. 2 is an attempt to submit specific negligence in general terms and as such is prejudicially erroneous.

■ Respondent's able counsel fails to specifically state just what theory of pleaded negligence is submitted by this instruction but does state that " * * * to proceed through this zone of danger at a speed that would not permit her to stop, whereas, if by reducing her speed before entering this danger zone to a rate where she could stop upon the appearance of danger, the jury was warranted in finding that she failed to have the control required of her." At another point in respondent's argument regarding this instruction it is stated: "If she was required to have such control of her automobile in order 'that it could readily and reasonably be stopped upon the appearance of danger', it would follow that she should have, in order to have had and maintained such control on the occasion in question, reduced her speed to a rate where she could have stopped if a pedestrian came out from behind the truck without injuring them." Such statements reasonably lead to the assumption that respondent regards Instruction No. 2 as submitting excessive speed under the circumstances or failure to stop, but doubt of the validity of this assumption is raised by the fact that these two allegations of negligence, while specifically pleaded in paragraphs 5(c) and 5(f) of the amended petition, were abandoned and the specific language used was that of another allegation of negligence as found in paragraph 5(h) of the amended petition. If this instruction can be construed as an attempt to submit failure to stop or slacken speed, as the separate concurring opinion in McCarthy v. Sebben, Mo., 331 S.W.2d 601, at page 606, states, " * * * it does not do so properly and clearly. * * * "

This instruction is an attempt to submit specific negligence in general terms, as was the submission in the Myers case where this language was used: " * * * the plaintiff did not have his vehicle under control so as to be able to stop or swerve the same upon the appearance of danger * * *." [333 S.W.2d 20.] The language of the opinion in the Myers case is equally applicable to the instant case where at page 21 of 333 S.W.2d, the court said:

"An instruction authorizing the jury to return a verdict for a party must require the finding of all essential fact issues necessary to establish the legal proposition on which the right to the verdict is based. Gaffner v. Alexander, Mo., 331 S.W.2d 622; Paisley v. Kansas City Public Service Co., 351 Mo. 468, 173 S.W.2d 33, 38[3]; Annin v. Jackson, 340 Mo. 331, 100 S.W.2d 872, 875, 876[4].

"In Annin v. Jackson, a judgment for the plaintiff was reversed and the cause remanded because of an instruction practically identical with the one now before us. The negligent act charged in the instruction was that the defendant 'failed and omitted to have said automobile under control so that it could be readily and reasonably stopped or swerved or the speed thereof slackened upon the appearance of danger'. In discussing this submission, this court very aptly said: 'It may be possible that situations may arise where the terms control, or management, embrace but a single matter of fact and may of them-

selves be fully descriptive of the same. But not so in the instant case.' We might add that the proper case for such a submission has not yet appeared. *Lack or loss of control is usually the result of some antecedent negligent act or omission which is the essential fact that should be hypothesized.* (Citing cases.)" (Emphasis supplied.)

So it is in the instant case. The antecedent negligent act or omission which, as respondent conceives this case, led to Mrs. Bradshaw's failure to have her automobile under control, should have been hypothesized and the failure to do so constitutes prejudicial error. McCarthy v. Sebben, supra; Myers v. Buchanan, supra; Annin v. Jackson, 340 Mo. 331, 100 S.W.2d 872; Carson v. Evans, 351 Mo. 376, 173 S.W.2d 30; Rosenkoetter v. Fleer, Mo., 155 S.W. 2d 157. See also May v. Bradford, Mo., 348 S.W.2d 133, handed down by the Supreme Court on July 10, 1961, and the cases cited therein. In addition to the excerpt from the case of Coit v. Bentz, supra, set out earlier herein, we think the language of Storckman, J., in the separate concurring opinion in that case of importance:

"In concurring I wish to point out additional authority criticizing 'lack of control' as a proper assignment of specific negligence in the operation of an automobile. May v. Bradford, Mo., 348 S.W.2d 133, calls it an 'abstract submission' and cites Rosenfeld v. Peters, Mo., 327 S.W.2d 264, 269[7, 8], wherein it is said such a submission 'at least was confusing and could be construed as a roving commission.' It has been termed a submission of general negligence which gives the widest kind of roving commission. Highfill v. Brown, Mo., 340 S.W.2d 656, 663[9]; McCarthy v. Sebben, Mo., 331 S.W.2d 601, 606. See also Kimmich v. Berry, Mo., 319 S.W. 2d 546, 547–548; Vogelgesang v. Waelder, Mo.App., 238 S.W.2d 849, 856[8]; and State ex rel. Burger v.

Trimble, 331 Mo. 748, 55 S.W.2d 422, 423[2].

"The Bar should be acquainted with the hazard which the continued use of this submission presents."

The giving of Instruction No. 2 constituted prejudicial error as to the appellant Bradshaw.

■■ The rule is that a case should not be reversed without remanding unless the appellate court is convinced that the facts are such that a recovery cannot be had. East v. McMenamy, Mo., 266 S.W.2d 728; Yarrington v. Lininger, Mo., 327 S.W.2d 104. As was said in May v. Bradford, supra, in the cases where this rule has been applied, the plaintiff had shown a state of facts which might entitle him to recover if his case were brought upon a proper theory. While those cases dealt with submissions under humanitarian negligence when primary negligence was the correct theory under the evidence, or vice versa, we think the application of the rule proper in this case. Respondent pleaded and the evidence would have supported a submission of driving at an excessive rate of speed under the circumstances, Wood v. Claussen, Mo.App., 207 S.W.2d 802, [4, 5], and therefore made a submissible case although incorrectly wording the submission. Therefore the judgment should be reversed and the cause remanded to the trial court for a new trial as to Bradshaw on the issue of her liability.

The judgment should be reversed and the cause should be remanded with directions to the trial court to hold in abeyance the verdict as to both liability and amount of damages against the appellant Pevely Dairy Company until the case is disposed of as to the liability of the appellant Oscar G. Schaefer, administrator of the estate of Mary Bradshaw, either by trial or otherwise, and then to enter judgment for the amount of the verdict held in abeyance against the appellant or appellants held liable. The Commissioner so recommends.

**PER CURIAM.**

The foregoing opinion of Brady, C., is adopted as the opinion of the court. The judgment of the circuit court is therefore reversed and the cause is remanded with directions to the trial court to hold in abeyance the verdict as to both liability and amount of damages against the appellant Pevely Dairy Company until the case is disposed of as to the liability of the appellant Oscar G. Schaefer, administrator of the estate of Mary Bradshaw, either by trial or otherwise, and then to enter judgment for the amount of the verdict held in abeyance against the appellant or appellants held liable.

ANDERSON, P. J., and RUDDY and WOLFE, JJ., concur.