Finding no reversible error in the case, the judgment is affirmed.

All concur.

**Mrs. Hessell MARTIN, Appellant,**

v.

**Avery Dean CRABTREE, Respondent.**

No. 44835.

Supreme Court of Missouri.

Division No. 1.

Nov. 14, 1955.

Charles T. Bloodworth, Jr., Poplar Bluff, for appellant.

Blanton & Blanton, Sikeston, for respondent.

COIL, Commissioner.

Mrs. Hessell Martin sought $15,000 damages for alleged personal injuries which she claimed resulted from respondent Crabtree's averred negligence in suddenly stopping his truck without timely warning in the path of the automobile driven by Mr. Martin in which plaintiff was a passenger. There was a defendant's verdict and plaintiff has appealed from the ensuing judgment.

Plaintiff contends that the trial court erred in giving sole cause instruction 7 for the reason that there was no substantial evidence to support the disjunctive submission therein that the sole cause of plaintiff's injury was the failure of Mr. Martin to use his emergency brake.

The evidence showed that plaintiff's husband's 1948 Dodge ran into the rear of defendant's dump truck at the east entrance of a 20'-wide, 215'-long bridge spanning Cane Creek in Butler County. There was a straight, level, quarter-mile stretch of black-top highway which approached the bridge from the east.

Plaintiff's version was that defendant brought his truck to a sudden stop just prior to entering upon the bridge without giving any timely warning to her husband-driver whose automobile was traveling at 20–30 m. p. h. about 50 feet to the rear of the truck. Plaintiff's husband said that when he saw defendant's truck stop he put on his foot brakes, put his automobile in low gear, realized his foot brakes were ineffective, pulled to the left into the eastbound lane, saw another truck traveling east in that lane, and then pulled back into the westbound lane and into the rear of defendant's truck.

Defendant's version of the occurrence was that someplace on the quarter-mile flat stretch of highway he passed the Martin automobile; that he was then traveling and continued to travel about 40 miles per hour until he reached a place about 200 feet east of the bridge's east end, when he began to gradually slow his truck because of a "hump" in the pavement at the bridge's east end which he knew tended to throw a vehicle to the south, and because of the approach of another truck traveling east which was then crossing the bridge with one of its dual wheels in defendant's westbound traffic lane; that he gradually slowed to 4–6 m. p. h., the eastbound truck passed him, and then his truck was struck in the rear by Martin's Dodge.

Instruction 7 was: "The Court instructs the jury that if you find and believe from the evidence that at all times herein mentioned the defendant was exercising the highest degree of care in the driving and the operation of his truck, and further find that at the time and place referred to in the

evidence the Dodge automobile in which the plaintiff was riding was equipped with an emergency brake in working condition, and further find that the driver of said Dodge failed to use said emergency brake on said Dodge to avoid said collision when he saw, or by the exercise of the highest degree of care could have seen the defendant slackening the speed of the truck he was driving, and further find that said failure to use said emergency brake was negligence, or if you find that the foot brakes on the said Dodge automobile in which the plaintiff was riding, were suddenly and unexpectedly defective, and further find that said negligent failure to use said emergency brake or (that) the said defective foot brakes was the sole cause of the collision referred to in the evidence, and further find that said collision was not contributed to by any negligence on the part of the defendant in any of the particulars set out in other instructions herein, then the plaintiff is not entitled to recover and your verdict shall be in favor of the defendant."

It will be noted that the foregoing instruction directed a defendant's verdict if the jury found that Martin's failure to use the emergency brake when he saw or could have seen defendant slackening the speed of the truck was the sole cause of the collision. Plaintiff contends that there was not sufficient substantial testimony to support that submission. That contention must be sustained.

A search of the record discloses that the following testimony of the driver of the Dodge was the only evidence pertaining to brakes and emergency brakes:

"Q. I will ask you if you had recently had your brakes on your car worked on? A. Yes, sir.

"Q. When was that? A. Well, I believe it was about three or four days before. * * *

"Q. Had you had an opportunity to drive your car after that? A. Yes, sir.

"Q. And where did you drive it to? A. I came to Poplar Bluff.

"Q. How many trips did you make to Poplar Bluff? A. I made two.

"Q. And was this the second trip when this collision occurred? A. Second trip, yes.

"Q. What was the condition of your brakes as you drove down here and in Poplar Bluff, and back out there? A. They were good. * * *

"Q. Now, you had two sets of brakes on this automobile of yours? A. Yes, sir.

"Q. The foot brake is what you had been having trouble with? A. Yes, I had them overhauled. * * *

"Q. In addition to that, you had an emergency brake? A. Yes, sir.

"Q. Now, where was the emergency brake situated? A. On the left hand side of the dash.

"Q. Is it one of these brakes that you just reach over with the left hand and you pull out? A. Yes, sir.

"Q. And it brings the car to an immediate stop? A. Well, I wouldn't say it would bring it to an immediate stop, but that is where the brake is located. * * *

"Q. Did you ever use the emergency brake to know how fast it would bring your car to a stop? A. I never did, no, sir.

"Q. You didn't apply your emergency brake on the day in question? A. I don't think so."

Defendant may be correct in his contention that the jury reasonably could infer from Martin's testimony set forth above that the Dodge was equipped with an emergency brake in good working order. That is to say, Martin's testimony, considered as a whole, may be subject to the reasonable inference that his emergency brake did not need attention at the time the foot-brake system was overhauled and therefore that the emergency brake was in good working condition.

Even so, however, there was no evidence of the distance in which the applied emer-

gency brake would have stopped or slowed Martin's car to less than 6 m. p. h. True, defendant's evidence showed that Martin could have observed the gradual slowing of defendant's truck for a distance of 200 feet. If it reasonably could be said that, therefore, Martin had 200 feet, or a substantial portion thereof, in which to stop or sufficiently slow his car by use of his emergency brake, then it also could be contended that any kind of a good-order brake would have stopped or slowed Martin's car in time to have avoided the collision. But no such conclusion is reasonable under the evidence. Defendant's instruction hypothesized *either* the unexpected failure of the foot brakes *or* Martin's failure to use his emergency brake as the sole cause of the collision. Defendant's submitted theories necessarily recognized that if the foot brake had worked there would have been no collision, or if *thereafter* Martin had applied his emergency brake there would have been no collision. Defendant's instruction makes it plain that defendant did not contend that Martin should have applied his emergency brake until his foot brakes unexpectedly failed. (Defendant's instruction as to the use of the emergency brake was not predicated on Martin's failure to have discovered sooner his defective foot brakes.)

It seems apparent, therefore, that Martin's failure to have used his emergency brake could not have been a proximate cause of the collision unless Martin's application of the emergency brake after the unexpected failure of the foot brakes would have stopped or sufficiently slowed his car and thereby have prevented the collision. Not only was there no evidence of the distance in which such stopping or slowing could have been accomplished, at Martin's speed of 20–30 m. p. h., by use of the emergency brake, but there was no evidence of the distance separating the vehicles at the time the foot brakes unexpectedly failed except Martin's testimony, which was not helpful to defendant on the present question.

We must conclude, therefore, that instruction 7 was reversibly erroneous for the reason that there was no substantial evidence to support the hypothesis that Martin's failure to apply his emergency brake was the sole cause of the collision. No citation of authority is necessary to support the obvious proposition that there must be substantial evidence to support each disjunctively hypothesized "sole cause" submitted in an instruction.

We find no merit in plaintiff's other attacks on instruction 7, viz., that "it requires the defendant [Martin?] to do a specific act in an emergency" and "gives the jury a 'roving commission.'"

Plaintiff contends that instruction 8 was erroneous because it was not based upon applicable statutory requirements as to timely signals. Plaintiff's instruction 1 directed a verdict for plaintiff if the jury found that defendant suddenly stopped his truck on the highway in front of the Martin car without giving a timely warning of his intention to stop by an arm signal or otherwise. Defendant's testimony was that an arm signal would have been ineffective because the bed of his truck extended so far beyond the side of the cab as to make an arm signal not visible to the driver of a following car; but that a visible warning by stop light was given. Instruction 8 told the jury that, even though it found that no arm signal was given, if it also found that a timely warning was otherwise given, *it* could not return a verdict for plaintiff because of defendant's failure to give an arm signal.

It is apparent that, irrespective of statutory requirements as to signals, instruction 8 had no effect other than to converse the requirement of instruction 1 as to timely warning. Plaintiff in effect required a finding that no timely warning was given. Defendant said, in effect, that if a timely warning was given, then under plaintiff's instruction you cannot find for plaintiff even though the warning given was not the warning by arm signal to which your attention was specifically directed in plaintiff's instruction 1.

We need not rule plaintiff's further contention that there was no evidence to sup-

port the hypothesis in instruction 8 that defendant's truck was equipped with a visible stop light in "good mechanical working condition." This, because we may not forecast what evidence on that subject will be adduced in the event of another trial.

For the reason that instruction 7 was erroneous in the respect noted, the judgment is reversed and the case remanded for a new trial.

VAN OSDOL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.