John N. MAUL (Plaintiff), Respondent,

v.

Victor FILIMON (Defendant), Appellant.

No. 29840.

St. Louis Court of Appeals.

Missouri.

Sept. 2, 1958.

William C. Bernhardt, De Soto, for appellant.

Dearing, Richeson & Weier, H. L. C. Weier, Hillsboro, for respondent.

JOHN K. REGAN, Special Judge.

This is an action for damages brought by John N. Maul for personal injuries and property damage sustained by him (respondent) as a result of a collision on August 19, 1955, between a Dodge automobile he was driving northwardly on U. S. Highway No. 67 about one-half mile south of Bailey Road (which is the main street of Festus and Crystal City), Jefferson County, Missouri, and a 1949 Mercury Station Wagon driven by appellant, the defendant below, who counterclaimed. The trial below resulted in a verdict and judgment for plaintiff in the sum of $1,000 on plaintiff's cause of action and for plaintiff on defendant's counterclaim. From said judgment defendant has appealed. The parties will hereinafter be referred to in the capacities in which they appeared in the trial court.

The plaintiff submitted his case to the jury on two pleaded assignments of negligence, (1) failure to keep a lookout ahead and laterally, (2) failure to keep his automobile under control so as to avoid a collision.

Defendant's answer consisted of a general denial and a counterclaim.

Defendant's counterclaim was submitted to the jury on the following allegations of negligence: (a) In negligently failing to give an appropriate signal of his intention to stop or suddenly decrease his speed and turn his car from a direct course at a time when such action could not be made with reasonable safety. (b) In attempting to make a left turn or "U" turn in a four lane highway divided into two or more roadways by means of a physical barrier where there was no intersection or cross-over.

The reply of plaintiff to the defendant's counterclaim was a general denial and a plea of contributory negligence.

According to the undisputed evidence, both plaintiff and defendant were driving their respective cars northwardly on U. S. Highway 67 about one-half mile south of Bailey Road, which is the main east and west street of both Festus and Crystal City, Jefferson County, Missouri. The day was clear, the pavement dry, the time about 4:30 P.M., D.S.T., August 19, 1955. The highway was concrete with two lanes 24 feet wide on each side of an elevated island which was dirt for a half mile to the south, terminating at the north end in a raised concrete island 4 or 5 feet wide. Northwardly from the north end of that island was a paved opening 15 feet wide between that island and the next similar island which was of raised concrete and extended 200 feet to an intersection. On the islands and facing oncoming traffic were black and white painted boards 10 inches wide and 4 feet high erected on steel posts and referred to as "barber poles." Traffic was heavy northbound and light southbound. Construction workers from a large chemical plant then being built a few miles south of Crystal City added to the normal northbound traffic at the time and place.

According to plaintiff's evidence he had been driving north in the inside or west lane for ½ mile south of the opening in the concrete pier and at about the same speed as other traffic. At a point 30 to 50 yards south of the opening, plaintiff testified that he turned on his left turn signal and slowed up to make the turn into the opening between the concrete islands. As plaintiff was making his turn into the opening, the left rear end of his automobile was collided with by the defendant's northbound station wagon. Plaintiff's evidence demonstrated that his car came to rest about 105 feet north of the south end of the opening in the pier, the automobile stopping so that it faced in a westerly direction, partially blocking the eastern half of the highway. The evidence further revealed that defendant's station wagon laid down 32 feet of skid marks up to the point of impact, located by a state highway trooper at a point in the inside lane even with the south end of the "opening." Further testimony indicated defendant's car then came to rest 45 feet from the point of collision completely off the highway on the east shoulder thereof and headed in a southeast direction. Plaintiff testified that he was thrown to the floor of the car, sustaining injury. No point is being made with reference to the injuries sustained by plaintiff.

Defendant testified that after finishing work at the chemical plant where he was a structural iron worker, and while enroute to his home, he was driving north on Highway 67 in the inside lane; that he first saw plaintiff was driving north in the outside lane when plaintiff suddenly turned left and to the west across both lanes of traffic into the opening between the two concrete islands, and stopped with the rear of his car protruding into the inside northbound lane. A car immediately ahead of defendant swerved from the inside lane and missed hitting plaintiff. Defendant saw the plaintiff's automobile and stepped on the brake and turned his car to the right and collided with plaintiff's vehicle. A car following defendant hit his station wagon when defendant collided with the plaintiff's Dodge automobile.

Defendant was rendered unconscious by the collision. He was removed from his station wagon by persons at the scene and transported by ambulance to the Politte Funeral Home where he was examined by one Dr. Twersky. The doctor recommended defendant enter a hospital for examination, which defendant refused to do. Defendant did not work from August 19, 1955, date of accident, until April of 1956, and his station wagon of the estimated value of $1,300 was a total loss.

(1) Defendant's first assignment of error is that the court erred in giving and reading to the jury plaintiff's instruction No. 1, which read as follows:

"The Court instructs the Jury that if you find and believe from the evidence that on the 19th day of August 1955, the plaintiff, John N. Maul, was driving his 1952 Dodge automobile northwardly upon U. S. Highway 61–67, about one-half mile south of the Junction of said highway with Bailey Road and that at the same time and place, the defendant, Victor Filimon was operating a 1949 Mercury Station Wagon over and upon said highway, traveling in the same direction of plaintiff's automobile, and immediately following the same, and if you further find and believe from the evidence that at said time and place, the plaintiff signalled with an electrical signalling device which displayed a signal plainly visible from the rear to make a left turn from the inside lane of the two north bound lanes of said highway, if you so find, and that the defendant did not exercise the highest degree of care in keeping a lookout ahead to observe plaintiff's automobile and its movements and in keeping the car operated by defendant under control so as to avoid a collision and if you further find that such conduct on the defendant's part, if any, was negligence and that as a direct result thereof, the defendant operated said Mercury Station Wagon into the plaintiff's automobile, and that plaintiff was not negligent in the operation of his automobile, then your verdict will be for the plaintiff and against the defendant."

Defendant contends this instruction was prejudicially erroneous in that it singled out one item of evidence and law and ignored all other facts and applicable law. He also claims that the instructions placed a different degree of care on defendant than on plaintiff, citing Tyson v. Bernhard, 322 Mo. 633, 17 S.W.2d 270; Hamre v. Conger, 357 Mo. 497, 209 S.W.2d 242; Section 304.014 and following, RSMo 1949, V.A.M.S.

Section 304.019(3) and (4) R.S.Mo., as amended Laws 1953, p. 587, V.A.M.S., provide:

"(3) An operator or driver intending to turn his vehicle to the left shall extend his arm in a horizontal position so that the same may be seen in the rear of his vehicle, and shall slow down and approach the intersecting highway so that the left side of his vehicle shall be as near as practicable to the center line of the highway along which he is proceeding before turning;

"(4) The signals herein required shall be given either by means of the hand and arm or by a signal light or signal device in good mechanical condition of a type approved by the state highway patrol * * *."

The Supreme Court in the Tyson case, supra, held defendant's instruction erroneous and prejudicial because it directed a verdict for the defendant if the jury found defendant's truck was collided with by another car causing it to strike plaintiff, but ignored the duties of defendant's driver to warn plaintiff and, if necessary, in view of the congested traffic, to stop.

In the Hamre case, supra, the Supreme Court held the plaintiff's instructions were declared erroneous because they required plaintiff to exercise only ordinary care while holding defendant to the duty of exercising the highest degree of care.

■ We believe that plaintiff's Instruction No. 1 was proper under plaintiff's pleadings, proof, theory of liability, and the statute, and that the two decisions hereinbefore cited do not require a different conclusion.

In the present case plaintiff's instruction requires the jury to find "that the defendant did not exercise the highest degree of care in keeping a lookout ahead to observe the plaintiff's automobile and its movements and in keeping the car operated by defendant under control so as to avoid a collision

and if you further find that such conduct on the defendant's part, if any, was negligence and that as a direct result thereof, the defendant operated said Mercury Station Wagon into the plaintiff's automobile, and that the plaintiff was not negligent in the operation of his automobile, then your verdict will be for the plaintiff and against the defendant." Since the instruction requires the jury to find that defendant's failure to exercise the highest degree of care was negligence and immediately afterwards calls for a finding that plaintiff was not negligent, we are of the opinion that no responsible jury would be led to the belief that a lesser degree of care was required of plaintiff than of the defendant.

■ The defendant complains that Instruction No. 1 improperly singles out one item of evidence, "that plaintiff signalled with an electrical signalling device which displayed a signal plainly visible from the rear to make a left turn." It is defendant's contention that this quoted part of the instruction without requiring a finding that the signal was timely given was erroneous.

However, defendant overlooks the fact that Instruction No. 1 required the jury to find as a fact the presence and action of the electrical signalling device as well as other facts, namely, that the defendant did not exercise the highest degree of care in keeping a lookout ahead to observe plaintiff's automobile and its movements and in keeping this car operated by the defendant under control so as to avoid a collision. Also the instruction required the jury to find that the plaintiff was not negligent in the operation of his automobile. See Christman v. Reichholdt, Mo.App., 150 S.W.2d 527.

■ Defendant's second assignment of error complains of the Court's action in refusing defendant's humanitarian instruction lettered "A" citing as authority therefor Wilson v. Toliver, Mo., 305 S.W.2d 423, which case is not persuasive under the evidence in the instant case. The defendant's evidence was that plaintiff was travel-ing north in the outside lane of Highway No. 61-67, and when he was about two car lengths from the opening in the concrete islands plaintiff suddenly turned left across the inside lane and into the opening and stopped with the rear wheels of his Dodge automobile still in the inside lane for northbound traffic. Although the evidence as a whole was that southbound traffic was light as compared to northbound traffic, defendant's own evidence placed a southbound automobile near the opening in the islands at the time of collision. Consequently defendant's own evidence fails to demonstrate that plaintiff could with safety to himself, his property and others using the highway and their property, have moved his car forward and thus avoided the collision.

The Missouri Supreme Court in Branscum v. Glaser, Mo., 234 S.W.2d 626, held one of the essential elements of the humanitarian rule is that defendant after receiving notice of a person's position of imminent peril had the present ability, with the means at hand, to have averted the impending injury without injury to himself or others, citing Banks v. Morris & Co., 302 Mo. 254, 257 S.W. 482, loc. cit. 484. Defendant's own sworn testimony conclusively demonstrates the contrary as to this element. Therefore, the trial court properly refused defendant's humanitarian instruction "A."

(3) Defendant contends the trial court erred in refusing to give his sole cause instruction "B", which submitted that issue as follows:

"The Court instructs the jury that if you find from the evidence that the plaintiff had placed his car in the inside lane of the highway and the defendant was driving in said lane in a careful and prudent manner and the defendant saw the car of plaintiff in time with the appliances at hand to slow his car and turn the same to the right and thereby avoid collision with the car of plaintiff and further find that another car being then driven directly

behind the defendant's car bumped and collided with the rear end of defendant's car and thereby, if you so find, caused the car of defendant to collide with the car of plaintiff, and find that the said collision, if any found, of the third car with the car of defendant was the sole cause of the collision of defendant's car with that of plaintiff and that defendant was not negligent in the operation of his car, then your verdict will be for the defendant, on the plaintiff's cause of action."

The defendant says Instruction "B" was based on the pleadings and evidence. Defendant's testimony in the record shows him to have been driving in the inside lane for northbound traffic on Highway No. 67 and that traffic was heavy. He testified further that there was an automobile in front of him which swerved to the right and thereby avoided hitting plaintiff. However, defendant was unable to stop before colliding with the plaintiff, although he made a hard application of his brakes. After defendant hit the rear end of plaintiff's Dodge, a third vehicle struck the rear end of defendant's Mercury Station Wagon. This testimony of the defendant was substantiated by another witness who stated that the Mercury Station Wagon hit the Dodge Sedan, after which the Mercury came into the right hand lane and was hit by a third car which didn't stop.

■■ Instruction "B" as submitted was based on the premise that defendant's car was struck in the rear by a third car, thereby knocking his car forward and into collision with the left rear of plaintiff's Dodge. The foregoing demonstrates that the instruction was just not supported by the evidence in the case. An evidentiary basis for such an instruction is a sine qua non of its validity.

The Supreme Court said in Happy v. Blanton, Mo., 303 S.W.2d 633, loc. cit. 637:

"Therefore, if the defendant undertakes to absolve himself from liability to plaintiff on the basis of sole cause negligence, he thereby assumes the burden of hypothesizing a statement of facts, *supported by the evidence,* from which a jury could find that not only did his negligence not contribute in causing plaintiff's injuries, but in addition thereto that the sole proximate cause of plaintiff's injuries was the negligence of someone other than him, and the hypothesization of facts in the instruction, or by proper reference to other instructions, must be complete in both respects." (Emphasis ours.)

In Martin v. Crabtree, Mo., 283 S.W.2d 573, 576, the Supreme Court held, "We must conclude, therefore, that instruction 7 was reversibly erroneous for the reason that there was no substantial evidence to support the hypothesis that Martin's failure to apply his emergency brake was the sole cause of the collision." No citation of authority is necessary to support the obvious proposition that there must be substantial evidence to support each disjunctively hypothesized "sole cause" submitted in an instruction.

■ (4) Defendant next contends that the trial court erred in refusing defendant's Instruction "C" which hypothesized negligence of the plaintiff in the act of turning left into the opening in the concrete island. This instruction assumed that the opening in the concrete island was not a cross-over or turning point, and its validity depended on that assumption. That assumption is simply contrary to the evidence.

Defendant's testimony as well as that of his witnesses Naes and Casey treated the opening in the concrete island as a cross-over or turning point. All of plaintiff's testimony, including that of a Sergeant of the Highway Patrol, likewise considered this 15 to 20 foot opening a cross-over. The action of the trial court in refusing Instruction "C" was proper. See Dowd v. Schoening, Mo.App., 276 S.W.2d 478, and Prague v. Eddy, 358 Mo. 327, 214 S.W. 2d 521.

■ (5) The next assignment of error by defendant is that the trial court permitted a highway patrolman, plaintiff's witness, to give his opinion as to the speed of defendant's car from the debris and skid marks at the scene of the collision. The error was harmless because the evidence of both sides showed without dispute no speed limit existed on this portion of the highway.

The evidence complained of was presented in the following manner. Plaintiff's counsel asked Sergeant R. E. Butler of the State Highway Patrol:

"Q. Did you have occasion to formulate any opinion with regard to the speed of the Filimon vehicle just prior to the impact?

"Mr. Bernhardt: I object to any opinion evidence by this Sergeant. It is purely hearsay. He wasn't there.

"The Court: If he tells what he based it on, he might testify.

"Q. Based on the said marks or the distance of the skid of the Filimon vehicle or the force of the impact as evidenced by the damage done to Mr. Maul's car and the Filimon Mercury Station Wagon, could you formulate any opinion with regard to the speed of the Filimon station wagon just prior to the time of the impact? A. For the purpose of my report, I estimate that the speed of the Filimon car at about 60 miles an hour, from the amount and darkness of the skid marks, from the amount of damage from the collision and the distance of travel following the collision.

"Q. Is there any speed zone through this particular area? A. No, sir."

Immediately following the above testimony on cross-examination by defendant's counsel, the Sergeant was asked:

"Q. Traffic is rather fast through that lane, isn't it? That is a four lane highway. What is the ordinary speed through there? A. From 55 to about 65."

Although the Sergeant's opinion testimony was erroneous, there was no proper objection made to the reframed question and in view of the testimony elicited by defendant's cross-examination as well as the fact that both sides throughout the case treated the speed of the cars before the impact as being in excess of 50 miles per hour, we are unable to see how defendant could have been prejudiced by the answer of Sergeant Butler. See Cornwell v. Highway Motor Freight Line, 348 Mo. 19, 152 S.W.2d 10, and Stutte v. Brodtrick, Mo., 259 S.W.2d 820.

(6) Defendant next complains that the trial court erred in improperly restricting cross-examination of plaintiff in relation to the payment for the repair bill on his Dodge automobile.

The record reveals the cross-examination concerning the repair bill was as follows:

"Q. You paid $800.00 for the car in April and drove it until August? A. Yes, sir.

"Q. Who did you pay for this repair bill you are talking about? A. Ollie Williams.

"Q. How did you pay it, by check or by cash?

"Mr. Weier: If the Court, please, I want to object to that. That is no measure of damages and no field for interrogation on cross-examination.

"Mr. Bernhardt: I don't believe he paid it. That is what I am getting at.

"Mr. Weier: It makes no difference whether he paid it or didn't pay it. It is an obligation of his.

"Mr. Bernhardt: If it is an obligation of his that is the wrong way to prove it. Prove it by the man who made the repairs, not by him. All he can prove is what he paid.

"The Court: The objection will be overruled.

"Q. How did you pay for the repair bill, John, or did you pay for the repair bill?

"The Court: You misunderstood me. I don't know whether it makes any difference whether he paid it. He obligated himself to pay. It makes no difference if there was a charge made for it.

"Q. Have you obligated yourself to pay for it?

"Mr. Weier: I object to that too, if the Court, please.

"The Court: I don't think it makes any difference.

"Mr. Bernhardt: It might make a world of difference, Your Honor, if it isn't true.

"Mr. Weier: I don't object to him asking the question if it has been paid or not, but ask him whether it is an obligation of his now, whether he owes for it, or how he paid for it, I object to that.

"The Court: I don't understand what it is you are trying to get at.

"Mr. Bernhardt: I can understand why Harry objects to that series of questions."

Thereafter defendant's counsel abandoned this line of interrogation and proceeded to other matters without making an offer of proof or informing the court of his objective.

■■■ It is an elementary principle that wide latitude is to be allowed on cross-examination, particularly in the case of a party who offers himself as a witness in a civil proceeding. No hard and fast rule can be laid down regarding the extent to which cross-examination may go, but any pertinent inquiry having some reasonable bearing on the issues in the case, or tending to impeach or discredit the witness is generally proper on cross-examination. However, in the case at bar defendant's counsel never made clear to the court the purpose of his interrogation, which could have had an improper as well as a proper objective. Therefore, we cannot convict the trial court of error under the circumstances. It is well settled that the scope and extent of cross-examination of a witness in a civil case is discretionary with the trial court and this is particularly so with regard to collateral matters. Hilton v. Thompson, 360 Mo. 177, 227 S.W.2d 675; Hungate v. Hudson, 353 Mo. 944, 185 S.W.2d 646, 157 A.L.R. 598; Willis v. Wabash R. Co., Mo., 284 S.W.2d 503.

■■■ The defendant's last assignment of error was the refusal of the trial court to sustain defendant's request for a directed verdict for the reason that plaintiff was guilty of contributory negligence as a matter of law.

In support of this contention, the defendant states that plaintiff's evidence convicts him of contributory negligence as a matter of law. However, we must consider the evidence in a light most favorable to the plaintiff, and in doing so we find the record shows the plaintiff had been in the inside lane of Highway No. 67 for northbound traffic for about one-half mile; that when he reached a point 30 to 50 yards from the opening between the concrete islands, he started slowing down and turned on his left turn signal. There was further testimony to the effect that plaintiff had turned left into the opening when he was hit in the left rear of his car.

Plaintiff testified that he didn't pay attention to southbound traffic because he had not reached a point where he had to cross that traffic.

Considering plaintiff's testimony, he was in the inside northbound lane for one-half mile and was traveling at a pretty good rate of speed until he was within 30 to 50 yards

of the opening in the concrete islands, at which time he started slowing down and had his left turn indicator working. The record is silent as to the position of defendant's car at this time, other than defendant's testimony that there was an automobile following plaintiff's car and ahead of defendant's vehicle, which automobile swerved to the right and avoided colliding with plaintiff's car. Defendant also testified that he didn't see plaintiff's car until he was within 35 to 50 feet of it and at no time observed plaintiff's left turn signal blinking. Defendant then applied his brakes hard laying down 32 feet of skid marks, swerved to the right and collided with the left rear end of plaintiff's car.

The Supreme Court of Missouri held in the case of Thompson v. Byers Transportation Company, 362 Mo. 42, 239 S.W.2d 498, loc. cit. 499:

> "The burden of establishing plaintiff's contributory negligence falls upon the defendant unless it be established as a matter of law by plaintiff's evidence. With defendant carrying the burden of proof, plaintiff's contributory negligence most frequently is a fact issue for the jury for the credibility of witnesses is involved, especially where there is a conflict in the testimony, the same as is defendant's actionable negligence ordinarily a fact issue. Consequently, plaintiff's contributory negligence is for the jury unless reasonable minds can draw only the conclusion that plaintiff was negligent. The whole evidence and all legitimate inferences deducible therefrom are viewed in the light most favorable to plaintiff and taken as true while the evidence and inferences favorable to defendant are disregarded in ruling the issue of contributory negligence as a matter of law."

See Fitzpatrick v. Kansas City Southern R. Co., 347 Mo. 57, 146 S.W.2d 560; Zumault v. Wabash R. Co., Mo., 302 S.W.2d 861.

Under the state of the record, we are constrained to hold that plaintiff's contributory negligence was a jury question and the trial court properly refused defendant's motion for a directed verdict.

Finding no error in the record, the judgment is affirmed.

RUDDY, P. J., and ANDERSON, J., concur.