Violet GRIFFITH, Appellant,

v.

Richard C. ADAIR, Respondent.

No. 16430.

Missouri Court of Appeals, Southern District, Division One.

Oct. 10, 1990.

Lindell R. Church; and D. Patrick Swee-
ney, Hall, Ansley, Carmichael & Gardner,
Springfield, for appellant.

JoAnne Spears Jackson, Bussell, Hough,
O'Neal, Crouch & Hall, Springfield, for re-
spondent.

CROW, Judge.

On November 3, 1987, a motor vehicle in
which plaintiff Violet Griffith was a pas-
senger was struck in the rear by a motor
vehicle operated by defendant Richard C.
Adair. Plaintiff sued defendant for bodily
injuries. Trial by jury resulted in judg-
ment for defendant. Plaintiff appeals,
seeking plain error review per Rule 84.-
13(c) [1] of her lone assignment of error. We
set forth only the evidence pertinent to the
alleged error.

At trial, plaintiff testified on direct exam-
ination that she "had suffered from nerv-
ousness and tension headaches" prior to
the subject accident. Asked the cause of
these problems, plaintiff replied she has a
retarded daughter (age 15 at time of trial)
who for several years required extensive
therapy. Plaintiff recounted she worked
with her daughter three to four hours per
day and in doing so became "really frus-
trated and uptight." According to plain-
tiff, this caused her "depression and ten-
sion headaches."

Plaintiff avowed she was still having
headaches. Her testimony:

"Q Can you describe for the jury
your headaches now as compared to the
headaches immediately after the acci-
dent?

A The headaches I had immediately
after the accident were quite a bit differ-
ent. I could—I would be able to seem to
take a treatment from Dr. Simmons [2]
or—and alleviate some of them and now
it's my constant companion. No matter
what I do, they're just there."

1. Rule 84.13(c), Missouri Rules of Civil Proce-
dure (1990), reads: "Plain errors affecting sub-
stantial rights may be considered on appeal, in
the discretion of the court, though not raised or
preserved, when the court finds that manifest
injustice or miscarriage of justice has resulted
therefrom."

2. A licensed chiropractor.

During cross-examination of plaintiff by defendant's lawyer this testimony was adduced:

"Q  Have you had problems with depression?

A  Yes, ma'am.

Q  Okay.  Just since the accident?

A  It's a different kind of depression than I've felt in the past, but yes, I have had depression since the accident.  It's of a different nature, but it's depression.

Q  Mrs. Griffith, has there been anything else that's happened in your life in the months immediately before or after this automobile accident in November [1987] that would cause you to not have an appetite, to be depressed, not sleep?

. . . .

A  Well, before the accident, yes, I would say, as far as my appetite—

Q  And what was that?

A  One was the loss of my father.  He was a diabetic and he died in a nursing home.  He had his leg amputated and three weeks later he was—passed away.  I would call that depressing, yes, ma'am.

Q  Well, anything else?

A  Kinette is depressing.

Q  And that's your handicapped daughter?

A  Yes, ma'am.

. . . .

Q  Has there been anything else?

A  Before the accident of '87?

Q  Yes, or in the months since.

A  The months since, I have been extremely depressed, yes.

Q  Okay.  Talking about things that may have happened in your life that would cause you to have these problems, such as not eating, not sleeping, being depressed—

A  . . . I've been depressed for several years.  A handicapped child is severely depressing to anyone.

Q  Okay.  So it wasn't just since this accident that you became depressed—

A  No, ma'am—

. . . .

Q  Okay.  And, in fact, you—don't you have a daughter who was kidnapped and raped and committed suicide?

A  No, ma'am.  I did not.

Q  Have you ever told anyone that?

A  I had a daughter that was—"

At this juncture plaintiff's lawyer requested, and received, a bench conference where he registered the following objection: "This line of questioning . . . is purely inflammatory and is a gross attempt to inflame the jury, prejudice the jury, and . . . doesn't have anything to do with this accident or the issues involved."

Defendant's lawyer assured the trial court she could substantiate plaintiff had told others plaintiff had a daughter who was kidnapped and raped and later committed suicide.  The trial court overruled the objection, whereupon cross-examination continued:

"Q  . . . Did you have an opportunity to examine Defendant's Exhibit Q, ma'am?

A  Yes, ma'am, I did.

Q  Is that a letter you wrote?

A  Yes, ma'am, I did.

. . . .

Q  Who did you write it to?

A  Mary Merry of Aloway Cosmetics. . . .  She's a franchise president for Aloway Cosmetics.

Q  And you worked for Aloway Cosmetics?

A  Yes, I did.

Q  Okay.  When did you start working for them?

A  Shortly before the accident, basically.

. . . .

Q  Okay.  And did you write this letter to her after you had started working with her company?

A  Yes, ma'am, I did.

. . . .

[Defendant's lawyer]: I'd offer Defendant's Exhibit Q.

[Plaintiff's lawyer]: We'd object, Your Honor, on the grounds that it's purely character assassination, or an attempt to.

It's irrelevant and immaterial and doesn't go to any issues in this lawsuit.

THE COURT: Be overruled. Be admitted.

[Defendant's lawyer:] This letter, Mrs. Griffith, you write: Dear Mary: Sorry I haven't called but, as you know, I have been out of state. My daughter passed away. She committed suicide. Is that what you wrote to her?

A Yes, ma'am, I did. . . ."

Defendant's lawyer then handed plaintiff a six-page document marked Defendant's Exhibit P. Plaintiff identified it as another letter she had sent Ms. Merry. At a bench conference defendant's lawyer stated she wanted to show the jury only one paragraph of Exhibit P. A "photocopy" of that paragraph was marked Defendant's Exhibit P–1. Proceedings resumed in the jury's presence and this colloquy ensued:

"[Defendant's lawyer]: I'm offering Exhibit P–1, Your Honor.

THE COURT: All right. Any objection?

[Plaintiff's lawyer]: No.

THE COURT: Okay. There being no objection, P–1 is admitted.

Q [By defendant's lawyer] Mrs. Griffith, this letter, from which Exhibit P–1 has been taken, was written to Mary Merry before the other letter you identified as Exhibit Q, wasn't it?

A I believe so, ma'am.

Q And in this letter . . . you state: 'At 1:30 that morning, I was called and told that a motorcycle gang had kidnapped my daughter, had held her hostage and beat her, badly, and gang raped her. That was my family crisis. I had her two children here with me. No, I didn't go to collect for shows that were due and, no, I don't want to take time to find someone to co-chair what I have on my books. That all seemed unimportant to me, so you do what you feel you have to do. I did. Sincerely, Vi.'

A Yes, ma'am.

Q And you wrote this letter?

A Yes, ma'am."

Plaintiff's point relied on reads:

"The trial court erred in allowing defense counsel to impeach plaintiff . . . on the collateral issue of whether she had a daughter who had been kidnapped, raped and committed suicide and further erred in allowing defense counsel to introduce extrinsic proof of prior inconsistent statements contained in letters on this collateral matter, because a witness may not be cross-examined on a collateral fact for the purpose of impeaching her testimony by contradicting her and extrinsic evidence may not be introduced for the purpose of impeachment on collateral matters, and the admission of the highly inflammatory evidence was extremely prejudicial and constitutes plain error [by] the trial court and the verdict in favor of defendant was the direct result of prejudice against plaintiff."

■ The above allegations of error do not appear in plaintiff's motion for new trial; consequently, they are not preserved for appellate review. *Stafford v. Lyon*, 413 S.W.2d 495, 497[1] (Mo.1967). Furthermore, plaintiff did not object when Exhibit P–1 was offered in evidence at trial. Therefore, she would have been barred from assigning its admission as error on appeal even had she raised the issue in her motion for new trial. *Wilhoit v. Fite*, 341 S.W.2d 806, 817[20] (Mo.1960).

■ Consequently, plaintiff's point relied on may be considered only under the plain error rule. Plain error review is reserved for situations in which hatred, passion or prejudice has been engendered causing manifest injustice or miscarriage of justice. *Sterling v. Thomas*, 657 S.W.2d 57, 58–59[1] (Mo.App.1983); *Sherpy v. Bilyeu*, 608 S.W.2d 521, 523[6] (Mo.App.1980).

Plaintiff cites *Senter v. Ferguson*, 486 S.W.2d 644 (Mo.App.1972), in support of her contention that admission of the evidence specified in her point relied on constituted plain error. In *Senter* the plaintiff claimed she sustained a fractured left wrist, lacerations, bruises, and "black eyes" in an automobile accident. On direct examination she testified she had been in good health before the accident. On cross-examination of the plaintiff and her doctor

the defendant adduced evidence about physical injuries and conditions over a 17-year period prior to trial. None of the injuries or ailments were even remotely connected with the injuries pled in the suit. The Eastern District of this Court held the evidence was irrelevant and immaterial, and that generally a witness may not be cross-examined about a distinct collateral fact for the purpose of impeaching his testimony by contradicting him. *Id.* at 647[5].

*Senter* relied on *Marrah v. J & R Motor Supply Co.,* 165 S.W.2d 271 (Mo.App.1942), also cited by plaintiff in this appeal. *Marrah,* like *Senter,* was a personal injury suit. In *Marrah* the plaintiff was asked on cross-examination about two earlier accidents without any showing that he sustained any injury in either of them such as the injuries sustained in the accident on trial, or that any of the injuries in the latter accident had their origin in either of the earlier ones. Receipt of evidence about the earlier accidents was held prejudicially erroneous.

*Senter* and *Marrah* are no help to plaintiff for two reasons. First, neither involved plain error review. Plaintiff cites no Missouri personal injury case where, upon plain error review, a judgment was reversed because a trial court received allegedly inadmissible evidence during a party's cross-examination. Our independent research has revealed no such case.

Second, in the instant case plaintiff testified she had experienced depression since the subject accident and that such depression was a different kind than she had felt before the accident. Paragraph 7(d) of her petition averred she "now suffers from . . . extreme and continual nervousness and anxiety." Paragraph 8 of her petition alleged she "will in the future suffer excruciating pain of body and anguish of mind."

■ Plaintiff thus put her alleged nervousness, anxiety and mental anguish in issue. Wide latitude is to be allowed on cross-examination, particularly in the case of a party who offers himself as a witness in a civil proceeding; while no hard and fast rule can be laid down regarding the extent to which cross-examination may go, any pertinent inquiry having some reasonable bearing on the issues in the case, or tending to impeach or discredit the witness, is generally proper on cross-examination. *Maul v. Filimon,* 315 S.W.2d 859, 866[8] (Mo.App.1958). In a suit for personal injuries the vital issue of the extent of the plaintiff's injuries is one upon which there should be wide latitude in cross-examination. *Jones v. Terminal R.R. Ass'n of St. Louis,* 363 Mo. 1210, 258 S.W.2d 643, 646[8] (1953).

■ Accordingly, defendant's lawyer in the instant case was entitled to ask plaintiff whether her alleged mental distress resulted from something other than the subject accident, and it is at least arguable that such inquiry could include whether plaintiff had a daughter who was kidnapped, raped and committed suicide. Such tragedies could cause a parent mental anguish and depression.

Plaintiff's brief asserts she had no daughter who was kidnapped, raped or committed suicide, and that defendant's lawyer "was well aware of that fact prior to the trial . . . and prior to [the] cross-examination." However, nowhere during his objection to Exhibit Q did plaintiff's lawyer tell the trial court that such events had not occurred or that defendant's lawyer knew they had not occurred. Consequently, the trial court, at the time it ruled on Exhibit Q, may have been unaware that, according to plaintiff, such events never happened. Additionally, as we have seen, plaintiff's lawyer made no objection whatever to Exhibit P-1.

Plaintiff also argues that even had such tragedies occurred, they would have been "clearly collateral to any issue in this lawsuit." Therefore, says plaintiff, defendant should have been bound by plaintiff's denial that such events occurred and should not have been allowed to refute the denial by the two letters.

It seems to us, however, that if such events had occurred it would have been arguably permissible for defendant to attempt to demonstrate they caused plaintiff's alleged mental distress. If that were

allowable, such events would not have been collateral matters.

On the record presented by plaintiff we cannot convict the trial court of plain error in receiving the evidence about which plaintiff complains. The evidence may have been admissible—an issue we need not decide—and the record fails to demonstrate that its admission resulted in hatred, passion or prejudice against plaintiff causing manifest injustice or miscarriage of justice.

Plaintiff's point relied on is, accordingly, denied and the judgment is affirmed.

MAUS, P.J., and PREWITT, J., concur.