Harold E. LEE, Appellant,

v.

LIBERTY BELL OIL COMPANY, Inc., a Corporation, Respondent.

No. 45080.

Supreme Court of Missouri.

Division No. 1.

June 11, 1956.

Gregg W. Keegan, St. Louis, for (plaintiff) appellant.

Moser, Marsalek, Carpenter, Cleary & Carter, Lee M. Carter, St. Louis, Paul E. Fitzsimmons, St. Louis, of counsel, for respondent.

WESTHUES, Judge.

Plaintiff, Harold E. Lee, filed this suit in the Circuit Court of the City of St. Louis to recover damages in the sum of $25,000 for personal injuries and for damages to his automobile alleged to have been caused by the negligence of the defendant when an oil truck operated by an agent of defendant collided with plaintiff's car. A jury trial resulted in a verdict for the defendant and plaintiff appealed.

Plaintiff briefed three points wherein he claims that the trial court erred. The first point is that the trial court erred in refusing plaintiff's instruction A and in giving an instruction in lieu thereof which plaintiff claims was erroneous. Plaintiff says that the court's instruction ignored plaintiff's theory of the case and adopted defendant's theory.

In the second point, plaintiff says the trial court erred in giving defendant's instruction No. 2 claiming that in the instruction controverted facts were assumed.

In the third point, plaintiff says that the verdict was "conclusively against the probative facts" and should be set aside and plaintiff be given a new trial.

The points briefed require a detailed statement of the evidence. The collision occurred at about 3:00 p. m., on February 5, 1952, on the north side of Chippewa Avenue about 300 or 400 feet west of Brannon Avenue in St. Louis, Missouri. Chippewa is an east-west street with six lanes for traffic, three for eastbound traffic and three for westbound. We shall refer to the lanes on the north side of the center line as lanes 1, 2, and 3, with lane 1 being next to the curb. Three vehicles were involved in the collision. They were plaintiff's car which he was driving, a large oil truck operated by defendant's agent, Charles Frey, and a Studebaker driven by Mrs. Winifred Brown. All three vehicles were being driven in a westerly direction on Chippewa. Plaintiff's car was in the lead and was in lane 2. When about 300 or 400 feet west of Brannon Avenue, plaintiff stopped his car

intending to back his car into a parking space near the curb in lane 1. At that time, the oil truck was in lane 2 some distance to the east and following plaintiff's car. The evidence did not show where the Brown car was at this time. It was an admitted fact, however, that the Brown car and the oil truck came into collision near the point where plaintiff's car was stopped. The right side of the Brown car came into contact with the left front wheel of the oil truck and thereafter the truck struck plaintiff's car pushing it into a Plymouth which was parked against the curb in lane 1 immediately north of plaintiff's car. The facts thus far stated were admitted. The dispute between the parties was at what point the truck driver turned toward or into lane 3 to pass plaintiff's car standing in lane 2 and also at what point in the street the Brown car came into contact with the oil truck. It was plaintiff's theory that Frey did not turn the truck to the left to pass until the truck was about 10 or 15 feet from plaintiff's car. We quote from plaintiff's evidence given on cross-examination:

"Q. Now, you saw the oil truck as it was coming westwardly behind you, didn't you? A. Yes, sir.

"Q. About where was it when you last noticed it? A. Well, I watched it continuously as it approached me, and I became very alarmed as the truck got closer and closer, and I would say that the truck was approximately, oh, ten feet behind me when he suddenly swerved to the left, maybe fifteen feet —ten or fifteen feet.

\*    \*    \*    \*    \*    \*

"Q. Did you then watch him turn to the left? Did you watch his movement up to the time that there was a contact between the truck and your car? A. I saw him suddenly swerve, and, of course, I became quite excited then. And the next thing I knew, I knew the car, the truck had crashed into the side of my car.

\*    \*    \*    \*    \*    \*

"Q. Now, are you telling us, Mr. Lee, that after it turned to the left it suddenly within a space of what must have been a very few feet swung back again this way (indicating) into your car? A. That is exactly what happened, sir, because when the truck crashed into me, he pushed me over against the curb, and I would say that the angle of the truck was approximately as you show there on the desk.

"Q. How fast was this truck moving, would you think? What is your judgment? A. Well, I would estimate about 12, 15 miles an hour, something like that.

\*    \*    \*    \*    \*    \*

"Q. From your own experience, Mr. Lee, have you even seen an automobile, let alone a huge, cumbersome oil truck, make a swerve to the left and then back to the right so as to hit the side of your car, to make a maneuver like that? A. The only way I can account for that is the fact, as I understand, there was a collision between this truck and a Studebaker which resulted in the sudden, abrupt swerve on the part of the truck."

Mrs. Winifred Brown, driver of the Studebaker, testified as a witness for plaintiff. We quote the following from her evidence:

"Q. All right. And as you operated your car westwardly on Chippewa on this particular day, what lane were you traveling in? A. On the outside lane.

"Q. And by outside lane do you mean the lane closest to the center line of Chippewa? A. That's right.

"Q. All right. Now, as you were traveling along westwardly there on the outside lane, just tell us in your own words what occurred? A. Well, I was passing this truck, and that is about all. I was in my lane and just when I passed and when I was about half-way past him, that is when I felt this contact with the truck.

"Q. All right. And you felt some contact between your automobile and the truck? A. Yes, sir.

"Q. All right. And at the time that this contact occurred between the automobile that you were operating and this truck, which lane were you operating in at that time? A. The outside lane.

"Q. All right. What part of your automobile was involved? A. The right side.

"Q. All right. And did this truck after striking your automobile, did it strike a car that Mr. Lee had been operating there? A. Well, I didn't see that.

"Q. All right. At any time prior to this occurrence there did you ever—at any time prior to the time your automobile was struck, did you ever operate your automobile on the opposite side of Chippewa? You understand what I mean? A. I don't understand.

"Q. As you went westwardly there you say you were traveling in the outside lane or the lane closest to the center of the street; is that correct? A. That's right.

"Q. And were you in that lane at the time that this truck came in contact with your car? A. Yes, sir."

Mr. Frey's version of what occurred was that he saw plaintiff's car several hundred feet ahead of his truck and saw the car stop in lane 2; that he concluded plaintiff intended to back his car into lane 1 to park it. He said he noticed no traffic going in either direction except his truck and plaintiff's car. Note what Mr. Frey had to say about the collision with the Brown car and with plaintiff's car:

"Q. Now, I want you to tell the jury as best you can how you made that move into the lane closest to the center. Did you turn rather sharply or gradually? I don't want to put the words in your mouth; you tell us. A. As I said before, the truck steers very hard. So in order to make the job easier for myself, I just pulled on the wheel slightly and just gradually went over there. There is no making of a sudden turn with that truck.

"Q. Did you get your oil truck fully over into that lane that is closest to the center of the street? A. As I said—yes, I'll say that I did.

"Q. That is, I mean, before anything unusual happened were you over in that lane? A. Yes, sir.

"Q. If you were there, say so, and if partly, say so. A. Best of my knowledge, I was fully in that center lane headed directly westward.

"Q. Now, could you estimate for about how far you were from where Lee was, where his car was in that adjoining lane when you got over into the lane next to the center, what distance between you and Lee's car when you got over there into that other lane? A. When he stopped his car, I couldn't have been more than 20 or 30 feet from Brannon. So I fully had 150 to 160 feet to get into the other lane.

"Q. All right. And did you get into the other lane? A. Yes, sir.

"Q. Now, then something unusual occurred as you were proceeding in that inside lane; is that correct? A. That's right.

"Q. Tell the jury what happened, please? A. Just as I got to Mr. Lee's car I noticed a little jerk in the wheel, followed then by a sudden noise (demonstrating), that spun the wheel right out of my hand and headed me into Mr. Lee's car.

"Q. Did you see what caused this jerk and jar or spin of your wheel, did you see what was happening? A. No, I couldn't actually see it because, as I say, I am really high sitting in the cab of the truck, and Miss—whatever her name is, is in a real low Studebaker.

"Q. Well, did something—could you tell whether or not there was something coming in contact or in collision with your motor truck? A. Well, I could hear the noise.

"Q. You heard the noise? A. I heard the noise.

"Q. What was that noise like? What did it indicate to you? A. It was a piece of metal hitting a piece of metal, I suppose.

"Q. And when did you notice this jar or spinning of your steering wheel with reference to that noise, that metal against metal? A. I would say they both happened at the same instant."

It was plaintiff's theory that Frey, the driver of the truck, was negligent in that he did not keep a proper lookout ahead to observe plaintiff's car; that he failed to observe the Studebaker car approaching in lane 3 and when the truck was only about 15 feet from plaintiff's car, the driver suddenly turned his truck to the left and into lane 3 causing it to collide with the Studebaker and plaintiff's car.

It was defendant's theory that Frey did see plaintiff's car and knew it had stopped and concluded that plaintiff intended to park the car; that Frey, when 150 feet from plaintiff's car, turned it gradually to the left into lane 3 and when the truck had reached the point where plaintiff's car was standing, the driver of the Studebaker attempted to pass the truck and turned her car to the right striking the front wheel of the truck causing the truck to collide with plaintiff's car.

Plaintiff's contention is that the truck would have collided with plaintiff's car irrespective of any collision with the Studebaker; that Frey failed to turn the truck to the left until it was too late to avoid a collision; that the truck should have been stopped in lane 2 behind plaintiff's car.

Plaintiff's instruction A which was refused by the trial court read as follows: "The Court instructs the jury that it was the duty of the driver of the oil truck owned by defendant, Liberty Bell Oil Company, Inc., to keep a lookout both ahead and laterally in the operation of said automobile truck and to keep the said truck under control so that it could be stopped at the first sign of danger.

"You are further instructed that if you find from the evidence that at the time and place in question defendant, Liberty Bell Oil Company, Inc., by and through its agent and driver, did not exercise the highest degree of care, in keeping a lookout ahead to observe plaintiff's car, or in failing to keep the truck under control so that it would not run into plaintiff's car, or if you so find that defendant's agent and servant, did not exercise the highest degree of care in keeping a lookout both ahead and laterally, but did propel and turn the said oil truck from one lane of traffic to another lane of traffic at a time when the said other lane was not clear but was occupied by another westbound automobile lawfully thereat and at the time defendant so propelled and turned his said truck from one lane to another collision with said other car was imminent, if you so find, and if you find that such conduct on behalf of defendant's truck driver, if any, was negligence and if you further find and believe that as a direct and proximate result thereof the oil truck did collide with plaintiff's automobile, if so, and that plaintiff, Harold Lee, was exercising the highest degree of care for his own safety, if so, and if you find that as a direct and proximate result of the negligence, if any, plaintiff, Harold Lee, was injured and his car damaged then your verdict should be in favor of plaintiff, Harold Lee, and against the defendant, Liberty Bell Oil Company, Inc."

It is the contention of the defendant that the trial court properly refused to give instruction A because the instruction would have given the jury a roving commission to speculate and determine what conduct of defendant's driver constituted negligence. We cannot agree. While the instruction is not a model, it would have submitted plaintiff's theory of the case to the jury, that is, the instruction would have, in substance, informed the jury that if they found from the evidence that the driver of the truck failed to keep a lookout or failed to keep the truck under control, or turned to the left into a lane that was not free from traffic, and that such conduct constituted negligence, and that as

a direct result of such negligence, the truck collided with plaintiff's car to plaintiff's injury, then plaintiff was entitled to a verdict. It must not be overlooked that there was no dispute about most of the facts and circumstances surrounding the collision. Hooper v. Conrad, Mo., 260 S.W.2d 496, loc. cit. 500, 501(2) (3). The instruction would have submitted to the jury the disputed issues for determination. A finding for plaintiff was authorized only if the jury found certain disputed facts to be as plaintiff claimed them to be. It certainly was not a roving commission to find for plaintiff on any other theory. Fortner v. St. Louis Public Service Co., Mo., 244 S.W.2d 10, loc. cit. 14, 15(4, 5); Douglas v. Twenter, Mo., 259 S.W.2d 353, loc. cit. 359(7–9) (10). Defendant also says that the instruction was properly refused because there was no evidence that Frey failed to keep a proper lookout ahead. Plaintiff testified that he observed the truck approaching and that it did not turn left or reduce its speed until it was only 10 or 15 feet from plaintiff's car and that then it suddenly swerved to the left. Mrs. Brown testified that she was driving in lane 3 and as she was passing the truck, she heard scraping of metal. This confirms plaintiff's evidence. From that evidence a jury would be justified in finding that the driver of the truck did not notice that plaintiff's car had come to a stop ahead of the truck in the same lane until it was too late to stop and that he suddenly swerved his truck into lane 3 and there contacted the Studebaker. Defendant concedes that there was ample evidence of defendant's agent's failure to observe the Studebaker in lane 3 and that the driver of the truck did not have his truck under control. So, as we see it, the instruction refused was amply supported by evidence.

█ Defendant next says that plaintiff did not preserve for review any errors in instruction 1 given by the court in lieu of plaintiff's refused instruction A. To this we agree. However, if instruction 1 was not a proper instruction, then the giving of the instruction did not cure the error of refusing instruction A. So, the question before us is, did the giving of instruction 1 cure the error in refusing plaintiff's instruction A? Defendant says instruction 1 properly submitted plaintiff's case to the jury. Plaintiff says the instruction given by the court curtailed plaintiff's theory of the case; that the instruction restricted plaintiff's right to a verdict on a finding of negligence by the driver of the truck *after* it had contacted or had come into collision with the Studebaker. The instruction is subject to the interpretation that the jury could not consider failure of the driver of the truck to discover plaintiff's car and in our opinion thereby unduly restricted plaintiff's right to a verdict on that charge of negligence.

The evidence justified a finding that the driver of the truck failed to observe that plaintiff had stopped his car in lane 2 and did not discover the car until the truck was only 10 or 15 feet from the car and that failure to see plaintiff's car in time was at least a contributing cause of the collision. Instruction 1 was in the conjunctive and therefore required the jury to find all charges of negligence in plaintiff's favor to authorize a verdict for him. We hold that the court's failure to give plaintiff's instruction A was error and that the error was not cured by giving instruction 1.

In view of the fact that this case must be remanded for retrial, it is unnecessary to consider the third assignment of error that the verdict is "conclusively against the probative facts" and therefore a new trial should be ordered. We express no opinion as to this assignment. It is likewise unnecessary to consider alleged error in defendant's instruction 2. The only errors assigned as to this instruction are that the instruction assumes facts that were not only controverted but were not within the evidence at all. We cannot take for granted that the parties will on retrial have the same witnesses as before or that additional facts will not be presented. Our determination of the correctness of this instruction would be of no help on a retrial of the case.

For the error indicated, the judgment is reversed and the cause remanded.

All concur.