Edward J. McCARTHY, Plaintiff-Respondent,

v.

Leo SEBBEN and Jack W. Hall, Defendants-Appellants.

No. 47153.

Supreme Court of Missouri,

Division No. 1.

Jan. 11, 1960.

Motions to Modify Opinion and Decision Sustained Feb. 8, 1960.

Luke, Cunliff & Wilson, Robert R. Schwarz, St. Louis, for appellant Leo Sebben.

Schwartz & James, Harry M. James, St. Louis, for appellant Jack W. Hall, Joseph Nessenfeld, St. Louis, of counsel.

Kappel & Neill, Walter S. Berkman, St. Louis, for respondent.

WESTHUES, Judge.

On the morning of April 20, 1956, at about ten o'clock, plaintiff engaged a taxi-cab at St. Louis Municipal Airport, St. Louis County, Missouri, to take him to the Civil Courts Building in St. Louis, Missouri. While traveling easterly on Natural Bridge Road, the cab collided with a car at the

intersection of Natural Bridge and Woodson Roads. To recover damages for the injuries received in this collision, plaintiff McCarthy sued Leo Sebben, the cab driver, and Jack W. Hall, the operator of the other car involved in the collision. A trial resulted in a verdict in plaintiff's favor in the sum of $8,000 against both defendants. The trial court overruled the separate motions for new trial filed by defendants and they appealed from the judgment entered.

We shall refer to plaintiff as McCarthy, to the defendant cab driver as Sebben, and to the other defendant as Hall.

On this appeal, Hall complains of instruction No. 3 submitting plaintiff's case to the jury; of instructions No. 5 and No. 6, which authorized a verdict for Sebben if the jury found that Hall's negligence was the sole cause of the collision; and that the verdict is excessive. He does not say that the evidence was insufficient on the question of his negligence.

Sebben briefed four points: that the court should have directed a verdict in his favor; that instruction No. 1, submitting the case to the jury, was erroneous; that instruction No. 7, a sole cause instruction, was erroneous; and that the trial court erred in permitting plaintiff's attorney to comment on the failure of defendants to produce Dr. Mueller as a witness.

Before disposing of these points, we shall make a general statement of the case and thereafter we shall make specific reference to evidence as may be necessary in connection with points briefed.

Natural Bridge Road is a four-lane highway with two lanes for eastbound traffic and two lanes for westbound traffic. There is a parkway, 28 feet in width, dividing the east and west traffic lanes with a breakthrough in the parkway at Woodson Road which runs in a southerly direction from Natural Bridge Road. Woodson Road does not extend to the north, thus forming a "T" intersection. Natural Bridge runs slightly in a southeasterly and northwesterly direction. Woodson Road, as it nears Natural Bridge, is divided into three separate lanes. The center, a double lane, enters Natural Bridge to permit traffic to travel onto the west on Natural Bridge and for traffic turning south from Natural Bridge onto Woodson. One lane curves to the east and connects with Natural Bridge for eastbound traffic and a lane on the west side is for traffic coming south off the eastbound lane of Natural Bridge Road. There is a third lane on the south side of the eastbound lanes of Natural Bridge which extends east and west from Woodson Road and gradually feathers into the main roadway of Natural Bridge. There are flasher warning signals for all traffic on Natural Bridge and no stop signs are involved in the present lawsuit.

Before the collision, Sebben was driving east on Natural Bridge in the lane next to the parkway and Hall was driving west on Natural Bridge in the lane next to the parkway. Hall made a left turn into Woodson Road in the westerly half of the breakthrough intending to drive south on Woodson Road. While Hall was driving across the eastbound lanes of Natural Bridge, the Sebben cab struck Hall's car broadside. There is a dispute in the evidence as to whether Hall stopped before he entered the eastbound lanes.

■ We shall direct our attention to points briefed by Hall. His first point is that the court erred in giving plaintiff's requested instruction No. 3. He says this instruction "authorized the jury to evolve any theory of negligence whatever in order to find against defendant Hall without any effective guide from the Court." We find no merit in this contention. The instruction submitted to the jury the question of Hall's negligence in the following manner: "* * * and if you further find and believe from the evidence that as he was entering the Eastbound traffic lanes on Natural Bridge Road, the defendant Hall failed to keep and maintain a careful watch and lookout for Eastbound traffic on Natural

Bridge Road; * * *." It is evident that the jury was not given a roving commission to find for plaintiff but authorized a verdict on failure to keep a lookout. Defendant Hall further says that the instruction authorized a finding on a charge of negligence not pleaded. There is no merit in this point. Note what is stated in the petition: "That defendant Hall was careless and negligent as follows: (a) in failing to keep and maintain a careful watch and lookout ahead and laterally." All we need to say about the alleged "sole cause" instructions, No. 5 and No. 6, of which Hall complains, is that the jury found against both defendants and therefore these instructions did not prejudice Hall's rights.

■■■ Hall complains that the verdict is excessive. The complaint is that plaintiff's instruction authorized $318.50 for expense of X rays and medical attention which was not warranted by the evidence; further, that the instruction authorized a recovery of $945 for loss of earnings which was in excess of the amount of loss sustained and as pleaded. We find merit in both contentions. Plaintiff's evidence was that he had been sent by his attorney to Dr. Bowdern for an examination; that Dr. Bowdern sent him to Dr. Peden to have X rays taken; that the bill from Dr. Peden was for $25 for the X rays and that Dr. Bowdern's bill was for $50. Plaintiff offered no evidence that the items were necessary medical expenses. These items totaling $75 should be disallowed. We find that the item of $945 authorized by the instruction for loss of wages is excessive by $405. This is for the reason that the excess mentioned is at most speculative. Plaintiff testified that his salary was $675 per month; that he lost 24 days of work. He further testified that he was required to work 12 hours per day but for each such day, he was credited with an additional ¾ of a day which he could accumulate. It was his theory that by losing 24 days, he also lost 18 days which he could have stored up during that time, so that he actually lost 42 days' work. The

evidence was that if plaintiff had accumulated 18 days, he could have taken the 18 days off from work without losing any salary. Whether this would ever occur is speculative. Plaintiff did receive his regular salary during his 24 days' absence. This was because he had accumulated that amount of time before he was injured. The total excess authorized by the instruction was $405. However, this error and the one concerning the X rays and the medical bill may be taken care of by remittitur.

■■■ Hall further says that the verdict, aside from the items above mentioned, is grossly excessive. To this we cannot agree. Plaintiff, at the time he was injured, was 54 years old. He had been for a number of years, and was at that time, a diesel engineer on a towboat (the Emily Jean) operating on the Mississippi River. He testified that he had been in good health and a strong man prior to the injury. Plaintiff's injuries consisted of a skinned nose requiring 15 stitches; his lips and face were cut and bruised; his left shoulder and his right knee and leg were bruised and swollen. Dr. Richard A. Sutter testified that plaintiff will suffer pain in the right ankle permanently and that he has an unstable knee with limited motion. These limitations are, according to plaintiff and Dr. Sutter, a material handicap in the performance of plaintiff's duties and will continue to cause discomfort and pain. Viewing the evidence of plaintiff and the doctor who treated him, we are not prepared to say that the jury's verdict is excessive. Unless a jury verdict is grossly excessive or inadequate, an appellate court should not set aside or disturb the verdict.

We shall now examine the points briefed by Sebben. His first point is that the court should have directed a verdict in his favor and the second pertains to the correctness of instruction No. 1 which authorized a verdict for plaintiff. We shall treat these questions together. The instruction complained of (omitting the concluding

portion thereof) reads: "The Court instructs the jury that if you find and believe from the evidence that on the occasion in question, defendant Sebben was operating his taxicab eastwardly on Natural Bridge Road in St. Louis County, Missouri; and if you further find and believe from the evidence that when said cab was approximately 100 feet west of the intersection with Woodson Road, defendant Sebben saw or, in the exercise of the highest degree of care, should have seen the westbound car driven by Defendant Hall on Natural Bridge slowing down to make a left turn as it approached the intersection of Woodson Road; and if you further find and believe from the evidence that thereafter as the taxicab continued to approach Woodson Road, defendant Hall proceeded to complete his left turn and started to drive southwardly across the eastbound lanes of Natural Bridge Road; and if you further find and believe from the evidence that at said time defendant Sebben failed to have said cab under control so that said cab could be stopped, slackened in speed or swerved and thereby avoid collision with the Hall car at said intersection; and if you further find and believe from the evidence that defendant Sebben, in so failing to have his said cab under control, if you so find, failed to exercise the highest degree of care and was negligent; * * *."

The evidence which we think a jury was justified in considering in addition to that mentioned above was given by a number of witnesses. It may be stated that we attempted to describe the intersection in detail for the reason that a large plat thereof was in evidence. From this plat and evidence, a jury was justified in finding that Natural Bridge Road is a through highway and that cars going westerly and intending to go south on Woodson Road should yield to the traffic going east on Natural Bridge Road. Hall testified that he slowed down as he approached the intersection, made his turn south, and stopped at the south edge of the parkway on the north line of the eastbound lanes on Natural Bridge Road; that he let two cars pass by going east, then looked west and saw no cars approaching; that he then attempted to cross the eastbound traffic lanes on Natural Bridge; that he did not see the Sebben cab until the moment of the collision. He stated that if he had seen the cab, he would have waited to let it pass. He estimated the distance to the west that a car could be seen as about 200 feet. Other evidence, as well as the actual measurement, showed the distance to the crest of the hill to the west to be more than 600 feet. We may comment here that Hall, had he looked when he said he did, could have seen the Sebben cab as it was in full view at that time. A disinterested witness, Fred Paubel, who did not know any of the parties and who was driving a cream truck for Pevely Dairy, testified that he followed Hall going west toward the intersection; that he was about 100 to 300 feet behind Hall; that he saw Hall's car turn south into the breakthrough at about 5 m. p. h.; that Hall "never stopped and he turned right in front of this cab."

Plaintiff testified that he felt an application of the brakes on the cab as it approached Woodson Road and that Sebben slowed down from 45 m. p. h., to about 35 m. p. h.; that when the cab was about 35 feet from the intersection, he saw Hall's car moving into the intersection and he then looked away not wanting to see the collision. There were tire marks made by the cab for a distance of about 30 feet.

Sebben testified that he saw Hall approaching Woodson Road from the east; that Hall was reducing the speed of his car and that he anticipated that Hall would turn into Woodson, but that he expected Hall to yield the right of way. He stated that as soon as he saw that Hall was not going to stop, he immediately applied the brakes but was unable to stop in time.

 Instruction No. 1, complained of, authorized a verdict against Sebben if Sebben did not have his car under control so

as to have been able to avert the collision. Under the facts shown by the evidence, Sebben had the right of way at Woodson Road unless and until in the exercise of the highest degree of care he saw or should have seen that the Hall car was not going to be stopped before entering the eastbound lanes of Natural Bridge Road. If after that moment, Sebben could have in the exercise of the highest degree of care averted colliding with the Hall car and failed to do so, then, and only then, would Sebben have failed to perform his duty and be liable to plaintiff. Instruction No. 1, in our opinion, was prejudicially erroneous because it authorized a verdict against Sebben irrespective of when his duty arose. We rule that under the evidence and proper instructions a jury could find that Sebben was negligent and therefore his point that the trial court erred in not directing a verdict for him is without merit. Plaintiff cited Maul v. Filimon, Mo.App., 315 S.W. 2d 859, as authority that instruction No. 1 was proper. In that case, plaintiff was injured while driving a car which was struck from the rear by defendant's car. Both cars were being driven in the same direction. Plaintiff gave a signal for a left-hand turn and while turning to the left, the car was struck by defendant's car. The case is not in point.

■ Sebben further complained of a sole cause instruction. As stated above, the jury found against both defendants and therefore the instruction did not prejudice Sebben.

■ Defendants requested that plaintiff be examined by Dr. Robert Mueller. This request was granted but at the trial, the doctor was not called as a witness. Plaintiff's counsel, in his argument to the jury, commented on this fact and defendants' objection thereto was overruled. This ruling was made the basis of an assignment of error on the theory that the doctor was as available to plaintiff as to the defendants. This assignment is obviously without merit. The doctor was selected by the defendants and not by plaintiff. The ruling of the trial court was proper. Hamilton v. Ross, Mo., 304 S.W.2d 812, loc. cit. 816(5).

It is our opinion that plaintiff should be entitled to hold his verdict and judgment against Hall and that the case on remand should be tried only as to liability on the part of Sebben. If, therefore, plaintiff will within 15 days enter a remittitur in the amount of $480, the amount of the excess as above noted, the judgment in the sum of $7,520 will be affirmed as to defendant Hall. Otherwise, the case will be remanded for retrial. If the remittitur is entered, the case will be remanded for retrial as to Sebben's liability. The judgment as to damages is to be stayed as to Sebben until such time as his liability may be determined.

It is so ordered.

DALTON and HOLLINGSWORTH, JJ., concur, and HYDE, P. J., concurs in separate opinion filed.

HYDE, Presiding Judge.

I concur in the opinion of WESTHUES, J., herein and in the ruling that Instruction 1 is prejudicially erroneous for the reason stated. However, since this case must be retried, I feel it is advisable to state my view that submitting failure to have a car under control submits nothing but general negligence and gives the widest kind of roving commission. Furthermore, I do not think that this instruction could be construed as attempting to submit failure to stop, slacken speed or swerve, and plaintiff's brief says it does not; but if it is so construed it does not do so properly and clearly. In Annin v. Jackson, 340 Mo. 331, 100 S.W.2d 872, 875, we said of a similar instruction (therein set out) that we were of the opinion the negligence "was

submitted as general"; that "the term 'control' as used in the pleading and in the instruction was used—ostensibly so to the jury—in a collective sense as embracing all the various factual elements and circumstances brought out in the evidence"; and that "there was no direction as to what acts were for consideration in either behalf in determining negligence vel non." The judgment was reversed and the cause remanded because of failure to submit specific acts of negligence. We said a similar instruction in Carson v. Evans, 351 Mo. 376, 173 S.W.2d 30, 31, was erroneous "because it failed to submit specific acts of negligence." Likewise, in Rosenkoetter v. Fleer, Mo.Sup., 155 S.W.2d 157, 160, on authority of Annin v. Jackson, supra, we held a similar instruction to be "submitting general negligence only" and reversed and remanded. See also Vogelgesang v. Waelder, Mo.App., 238 S.W.2d 849, 856.

It is true that in Lee v. Liberty Bell Oil Co., Mo.Sup., 291 S.W.2d 132, the main instruction contained such an alternative submission, which I think made the instruction technically incorrect; but the instruction was approved because it did fully submit plaintiff's theory of the case to the jury (with a detailed hypothesization of facts) and because there was "no dispute about most of the facts and circumstances surrounding the collision." See also Johnson v. Flex-O-Lite Mfg. Corp., Mo.Sup., 314 S.W.2d 75, holding such an instruction improper but not prejudicial in that case because there was a full hypothesization of the facts in another verdict directing instruction and because instructions given at the defendant's request tended to cure the error. There was no other hypothesization in Instruction 1 herein as to facts upon which the liability of defendant Sebben was based; nor was there anything in any instructions requested by him to cure this error or to submit any theory of specific negligence.